DAVEGA, Inc., v. LINCOLN FURNITURE MFG. CO., Inc.

Circuit Court of Appeals, Second Circuit.
November 19, 1928.

No. 54.

Moses, Nehrbas & Tyler, of New York City (Henry C. Moses, of New York City, of counsel), for plaintiff in error.

Louis Winer, of New York City (J. P. Buchanan, of Marion, Va., and James J. Jackman and Henry J. Greenstein, both of New York City, of counsel), for defendant in error.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). The Lincoln Company has a factory at Bristol, Va., where it manufactures furniture. One Shlivek solicits orders in New York for sales of furniture at an office where the company ordinarily keeps four or five suites of furniture as samples. The New York floor space is leased by the Virginia Table Company, another affiliated concern, which allows the Lincoln Company to occupy this space rent free. The telephone in the office is leased by Shlivek at his own expense, who has desk room on the premises for himself and his clerks. Only the names of Shlivek and the Virginia Table Company are listed in the telephone book, but on the office door appears, not only his name, but that of the Lincoln Company, the Virginia Table Company, and Central Glass Company, for all of which he solicits orders.

Shlivek obtains orders in New York for the Lincoln Company, amounting to about $200,000 per year, and is paid a commission of 6 per cent. on sales of furniture of less than a carload and 5 per cent. on sales of larger quantities. This commission is payable, regardless of collections. The orders taken by Shlivek are forwarded to the company's home office in Marion, Va., and, if they are accepted there, the shipments are made to the customers f. o. b. Marion. Shlivek renders no invoices, for they are sent from Virginia, and he keeps no record of accounts showing the maturity dates of invoices. When accounts are overdue, he sometimes attempts to collect them for the company, and also makes adjustments of accounts subject to the approval of the company. Any checks collected on accounts are mailed to it.

There is the single exception to this course of business in the case of samples. They are sometimes sold by Shlivek directly, in order to avoid the expense of recrating, or to be of service to customers who are badly in need of furniture. In these cases he receives cash at the list price, or even extends credit in the case of accounts known to be acceptable to the company. When cash is paid, it is at once transferred by Shlivek's own check to Virginia. The sales of samples amount to only about $1,000 per year, or one-half of 1 per cent. of the aggregate orders taken by Shlivek.

The Lincoln Company has two bank accounts in New York City, but their purpose or use in practice does not appear in the record. It also is listed in the directory of the building in New York where it displays its samples, and Shlivek is not.

C. C. Lincoln, Sr., the president of the Lincoln Company, comes to New York about four or five times a year, and his son, C. C. Lincoln, Jr., the vice president and sales manager, about half a dozen times. On substantially each occasion they discuss business matters of the company with Shlivek and endeavor to adjust accounts while there. The son solicits business on radio cabinets, which are manufactured by the Lincoln Company. The present cause of action arose out of an order for 5,000 cabinets, which appears to have been arranged by him with a buyer for the plaintiff in New York, a memorandum of which was reduced to writing there in the presence of both parties and mailed to Virginia, whence an acceptance in writing was forwarded. A dispute arose over this contract, and C. C. Lincoln, Sr., being in New York to adjust the accounts of two other customers, sought to adjust this one. The settlement fell through and a summons was served upon him in this action, which is for an alleged breach of the contract for the radio cabinets. He was attending to collections.

It thus appears that:

(1) The defendant secured orders in New York through Shlivek for about $200,000 of furniture per year;

(2) The defendant sold in New York through Shlivek about $1,000 of furniture per year, which had been shipped there for samples; Shlivek collected some overdue accounts.

(3) The president and sales manager have come here 10 or 11 times a year, and while here have discussed business matters with Shlivek, and have also at times adjusted accounts with customers.

(4) The sales manager, C. C. Lincoln, Jr., while in New York, arranged the contract for radio cabinets on which this action is brought, and has also solicited here other orders in radio cabinets.

This is a very close case. The Supreme Court has said that the test of whether a foreign corporation is amenable to process depends upon whether "it is doing business within the state in such manner and to such extent as to warrant the inference that it is

present there." Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. at page 265, 37 S. Ct. 280, 61 L. Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U. S. at page 87, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Rosenberg Co. v. Curtis Brown Co., 260 U. S. at page 517, 43 S. Ct. 171, 67 L. Ed. 372. This is a mere reiteration of the earlier statement by the same court that it "has decided each case of this character upon the facts brought before it and has laid down no all-embracing rule by which it may be determined what constitutes the doing of business by a foreign corporation in such manner as to subject it to a given jurisdiction." St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. at page 227, 33 S. Ct. 248, 57 L. Ed. 486.

We are, in short, aided only by comparing those decisions in which the facts have been held to show the presence of corporations in foreign states, for the purpose of subjection to the jurisdiction, and the contrary. It has been definitely determined that the mere renting of an office and solicitation of business in the foreign state is insufficient to subject the corporation to service of process. W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 35 S. Ct. 458, 59 L. Ed. 808; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537. Nor is the fact (if it be the fact, as is disputed) that the cause of action asserted here arose in New York material, unless the corporation was doing business in the sense that is required to subject it to jurisdiction. Rosenberg Co. v. Curtis Brown Co., 260 U. S. at page 518, 43 S. Ct. 170, 67 L. Ed. 372.

The plaintiff says that much more was done here than the solicitation of orders, and especially relies on International Harvester v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479. In that case the traveling salesmen of the harvester company did far more than to take orders to be accepted outside of the state. While it was generally provided, as in the present case, that "all contracts of sale must be made f. o. b. from some point outside of Kentucky, and the goods become the property of the purchaser when they are delivered to the carrier outside of the state," the agents were authorized to receive money, checks, or drafts from any one within the state who might owe the company and take notes of customers' payable therein. Here Shlivek was paid nothing for collecting accounts. He received no salary, but was only paid a commission based on the contracts which originated through him, and not on the amount realized. He did not receive

payment for the furniture shipped from Virginia, or even have a record of the accounts. He occasionally adjusted disputes, subject to the approval of the home office, and procured payment of *overdue* indebtedness. The president and vice president of the corporation came into New York a few times a year, and made, or sought to make, adjustments; but, if occasional adjustments of accounts within the state are to be regarded as sufficient to subject a corporation to the jurisdiction, no foreign corporation can solicit business in any volume without becoming liable to service of process. Such a result seems a sufficient answer to the suggestion that the adjustment of disputes with customers strengthens the plaintiff's case. The situation is different from that in the Harvester Case, where the course of business involved not collection of *overdue* accounts, but regular payment in the foreign state.

Nor does the decision in St. Louis S. W. Ry. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, aid the plaintiff. There the presence of an office and a general freight and passenger agent in New York, with the power to adjust losses, was held to subject the company to the jurisdiction. Likewise sending agents into a foreign state to adjust fire insurance losses on policies covering property within that state has been held to be doing business. Pennsylvania Lumbermen's Mut. Fire Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810. But such adjustments are unlike the settlement of occasional disputes with customers, who have purchased merchandise, and are rather the inevitable and constant incidents of an insurance business. As the Supreme Court said in that case, at page 414 (25 S. Ct. 485):

"As the policy insures against loss, it of course contemplates that such loss may occur; and it also contemplates that the company shall send to the place where the loss occurred, that is, to New York, its agent, for the purpose stated. When, under the terms of the contract, the company sends its agent into the state where the property was insured and where the loss occurred, for the purpose of adjustment, it would seem plain that it was then doing the business contemplated by its contract, within the state."

We regard sporadic settlements of claims such as are disclosed in the present record as entirely different from the regular adjustment of insurance losses and occasional collections of overdue accounts in the same category. We, therefore, come down to the question whether the sales of samples and the making of the contract in suit are suffi-

cient additional factors to bring the defendant within the jurisdiction. The first item was relatively trifling. It only represented one-half of 1 per cent. of the business originating with Shlivek. The samples were not sent for sale, but for exhibition and advertising. If a company doing a large business in such a way as to avoid coming into the state, occasionally disposed of some of its samples within the state for the convenience of its customers, or itself, we do not regard such acts as "doing business * * * in such manner and to such extent as to warrant the inference that it is present. * * *" Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. at page 265, 37 S. Ct. 280, 61 L. Ed. 710. The acts had no substantial bearing upon the general conduct of its business. They approximated the taking of orders, accompanied by proof of a single sale, in W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U. S. 723, 35 S. Ct. 458, 59 L. Ed. 808.

The contract for the radio cabinets, which is the subject of this suit, was not enforceable until it was "signed by the party to be charged." New York Personal Property Law (Consol. Laws, c. 41) § 85. While the terms were at least substantially agreed upon in New York, the transaction took the ordinary course; and while C. C. Lincoln, Jr., arranged the terms in New York, no written agreement was signed by the Lincoln Company there, but a confirmation was mailed from Virginia in answer to the letter of Davega, Inc. Not only was this but a single transaction, but it may also be regarded as no more than solicitation of business within this jurisdiction, and hence not a doing of business. Green v. Chicago, Burlington & Quincy Ry., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916.

The order is affirmed.