## SNYDER v. J. G. WHITE ENGINEERING CORPORATION (PRELOAD CO., et al., Defendants).

District Court, S. D. New York.

June 5, 1945.

Blank and Convisser, for plaintiff.

William Paul Allen, of New York City, for the McKay Co.

Glenney, Mathews & Hampton, of New York City, for defendant and third party plaintiff.

Desmond T. Barry, of New York City, for third party defendant.

RIFKIND, District Judge.

McKay Co., Inc., impleaded as a third party defendant, appears specially and moves to dismiss the action and to vacate the service of the summons and complaint on the ground that it is a foreign corporation which is not within the jurisdiction of the court and on the further ground that process was delivered to a person not authorized by the Rules to receive it.

From the complaint it appears that the action is by the administratrix of Fred W. Snyder, who died in the collapse of a scaffold used on a construction job at Lewistown, New York. The deceased was employed by The Preload Company, a subcontractor. Defendant, J. G. White Engineering Corporation was the general contractor. In the third party complaint it is alleged that White loaned hoists for the scaffold to Preload; that White had purchased the hoists from a dealer which, in turn, had purchased them from a manufacturer, and that the latter had purchased the chains used in the construction of the hoists from McKay.

McKay is a Pennsylvania corporation. Its main office is in Pittsburgh and its factory, in York, Pennsylvania. It has not qualified to do business in New York. It has not designated anyone to accept service of process in New York. None of its officers or directors resides in New York. None of its meetings has been held in New York. It has no bank account, no stock of merchandise and no books of account in New York. All of its contracts are made at its main office, in Pennsylvania.

At 30 Church Street, in New York City, the company maintains an office whose dimensions are 14 feet by 28 feet. These premises are leased by, and the rent is paid by, McKay from its main office. It pays an occupancy tax of $1 to the City of New York. The name of McKay appears on the door of this office. The company is listed in the New York Telephone Directory and in the Classified Directory. The office is equipped with about $200 worth of office furniture. No corporate records are kept at this office except catalogues and price lists of its products and copies of invoices on sales solicited by a salesman operating out of this office.

The personnel of this office consists of Robinson, the salesman, and a stenographer. Both are paid a stated salary by check received from the main office. Neither receives any commissions. Robinson solicits orders in the metropolitan area of New York and in parts of New Jersey and Connecticut. All orders obtained by him are subject to acceptance at the main office and all shipments are made directly from the factory to the customer. Pay-

ments are made to the home office. Occasionally, Robinson prods an overdue account. Occasionally, he receives a check from a customer which he forwards immediately to the main office. He has no company funds at his disposal, except a petty cash fund of $25. About 4% of the company sales are attributable to Robinson's efforts. Another salesman, operating out of the main office, solicits business in the State of New York outside of the metropolitan area and does, relatively, a small amount of business. Salesmen have authority to quote prices in accordance with the published price lists and to specify delivery dates in accordance with general schedules supplied from the home office.

Occasionally, Robinson investigates complaints. Adjustments are effected by the main office. Robinson's activities in New York in behalf of the company have continued for a period of years and have resulted in a continuous stream of sales to customers in New York. In this he has been aided by advertisements published by McKay in trade journals which circulate in New York.

These are the facts as they emerge from all the affidavits submitted on the motion and from a deposition of Robinson. There is no material dispute as to the facts. The law to be applied, however, is very sharply disputed.

Apparently, the bar has not been equipped by the courts with a rule of law which can be used to interpret the facts with a fair degree of certainty. This is revealed by the frequency with which this problem is presented in the motion term of this Court. In part, this is unavoidable. Each case must be decided on its own facts. The Supreme Court "has laid down no all-embracing rule by which it may be determined what constitutes doing of business by a foreign corporation in such manner as to subject it to a given jurisdiction." Davega, Inc., v. Lincoln Furniture Mfg. Co., 2 Cir., 1928, 29 F.2d 164, 166, quoting St. Louis Southwestern R. Co. v. Alexander, 227 U.S. 218, at page 227, 33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas.1915B, 77. In part, I believe, the conflict at the bar is a product of the circumstance that the rule is in process of redefinition and has apparently not yet crystallized in its new form.

Were the Davega case the last word in this Circuit on the question of what constitutes doing business, I would have no trouble in deciding that McKay was not

so doing business in New York as to be subject to the jurisdiction of this Court. The only difference between that case and the case at bar is that in that case the salesman was paid commissions, and in this case, a salary. It does not appear in the Davega case that the salesman was an independent broker, although he did also solicit orders for an affiliated company and another company of unstated relationship. I should suppose that the mode of calculating the salesman's compensation does not in and of itself make any substantial difference. Moreover, in the Davega case, the salesman sold a small amount of samples for cash from the stock on hand in New York, and the company had two bank accounts in New York. No such facts appear in the case at bar.

In that case the court said, "It has been definitely determined that the mere renting of an office and solicitation of business in the foreign state is insufficient to subject the corporation to service of process."

And the manner in which the court distinguished International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, justified the inference that it did not regard the continuity of the solicitation as sufficient to change the result. The court, in the Davega case, consisted of Judges Learned Hand, Swan and Augustus Hand, the latter writing the opinion. The same court, similarly constituted, decided Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 1930, 45 F.2d 139, 141. Here doubts were expressed. *"Possibly"*, said Judge Learned Hand, "the maintenance of a regular agency for the solicitation of business will serve without more. The answer made in Green v. Chicago, B. & Q. R. Co., 205 U. S. 530, 27 S.Ct. 595, 51 L.Ed. 916, and People's Tob. Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537, *perhaps* becomes somewhat doubtful in the light of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and, if it still remains true, it readily yields to slight additions. In Tauza v. Susquehanna Coal Co. [220 N.Y. 259, 115 N.E. 915], there was no more, but the business was continuous and substantial." (Italics supplied.)

Since, in actual life, solicitation rarely exists in the pure form, the "slight additions" are generally present; and there would be little difficulty in finding them here, if the avowed object was to deviate

from the rule of the Davega case without acknowledging the change in direction.

In Jacobowitz v. Thomson, 2 Cir., 1944, 141 F.2d 72, the facts were too clearly in favor of a finding that the foreign corporation was doing business within the state to require further consideration of the doubts raised by Judge Hand in the Hutchinson case. But in Barnett v. Texas & P. R. Co., 2 Cir., 1944, 145 F.2d 800, 804, Judge Frank quoted the language reproduced above from the Hutchinson case; and, in response to defendant's suggestion that it had established its office in New York in reliance upon Green v. Chicago, B. & Q. R. Co., stated that "International Harvester v. Kentucky, supra, decided in 1914, and Hutchinson v. Chase & Gilbert, supra, decided in 1930, gave defendant warning that ·such precedents were not likely to protect it from such suits as this." The Davega case was not cited. Judge Swan dissented.

Normally, I should suppose that a District Judge, like the defendant in the Barnett case, is expected to heed the "warning" and move in the direction of the dicta in Frene v. Louisville Cement Co., 1943, 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926, per Rutledge, J. However, in Deutsch v. Hoge, 2 Cir., 1944, 146 F.2d 201, 203, decided within a fortnight of the Barnett case, the Davega case was again cited by Judge Chase and completely relied upon. The Barnett case was not mentioned. Judge A. Hand concurred. Judge Learned Hand dissented. The grounds of his dissent are not relevant to the present case; but it is significant that he *assumed* for purposes of that appeal that Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N. E. 915, "went further than the decisions of the Supreme Court warrant: i. e. that my brothers are right, if the question to be decided were merely whether the defendants were 'present' within the state in the sense that the Constitution demands."

Apparently there is a division of opinion among the judges of the Court of Appeals of this Circuit.[1] In these circumstances I am obliged to make a forecast; and to use for such purpose whatever straws are available.

State of Georgia v. Pennsylvania R. Co., 65 S.Ct. 716, 732, was not directly concerned with the question of what constitutes doing business. But the question whether the defendants in that case could all be sued in one district was involved, at least in a subsidiary role. With respect to that, the minority consisting of the Chief Justice and Justices Roberts, Frankfurter, and Jackson, said, "A corporation both is 'found' and 'transacts business' in a district in which it operates a railroad or in which it maintains an office for the solicitation of freight or passenger traffic."

If to those four we add Justice Rutledge, whose views to the same effect were expressed in Frene v. Louisville Cement Co., supra, we have a majority of the Supreme Court subscribing to the view that the maintenance of an office, plus the regular solicitation of business, constitutes "transacting business", for the purpose of subjecting a corporation so engaged to a given jurisdiction. McKay satisfies this test and I conclude that the first ground upon which its motion is based is insufficient to support it.

The disposition of the second ground, upon which the motion is made, is closely tied up with the decision on the first. Since I have found that McKay was doing business in the state, I should not hesitate to hold the service on Robinson proper. In Tuchband v. Chicago & A. R. Co., 1889, 115 N.Y. 437, 440, 22 N.E. 360, 361, the court said: "Where a corporation created by the laws of any other state does business in this state, the person who, as its agent, does that business should be considered its managing agent; and more especially should that be so where the foreign corporation has an office or place of business in this state, and when that office is in charge of that person and he there acts for the corporation."

Motion denied.

---

[1] A case indistinguishable on its facts from the instant case is Costello v. Lee, D. C.S.D.N.Y., 1941, 43 F.Supp. 947, in which Judge Leibell held that the defendant was not doing business in New York. The third party plaintiff stresses the fact that McKay had paid an occupancy tax to the City of New York. In Chaplin v. Selznick, 1944, 293 N.Y. 529, 537, 58 N. E.2d 719, the Court of Appeals emphasized that circumstance. In substance, however, the payment of the occupancy tax adds nothing to the leasing of an office.