**BOMZE et al. v. NARDIS SPORTSWEAR, Inc.**

District Court, S. D. New York.

June 15, 1946.

Kramer & Kaprow, of New York City, for plaintiffs.

Samuel M. Ostroff, of New York City, for defendant.

CONGER, District Judge.

This is an action to enjoin the infringement of a trade-mark and for an accounting of profits.

The action was originally commenced in the Supreme Court of the State of New York and on the application of the defendant was removed to this Court.

Before answering, defendant moved in this Court to dismiss the complaint and to set aside and vacate the service of the summons and complaint on the grounds (a) that the defendant was a foreign corporation and was not doing business in the State of New York and had never petitioned for or received authority to do business in New York State and (b) that the person served was not an officer, director or managing agent of the defendant or a person authorized to accept service for the defendant.

The defendant's motion raises the oft-occurring problem of the extent to which a foreign corporation may engage in business in New York without being subject to the process of the Courts within the State.

On the return of the motion, it became evident that various facts were disputed, and many not clarified, and so the matter was referred to a Special Master to hold hearings and report his findings. His report is now before me for consideration.

Defendant has moved to confirm the report and findings of the Special Master. Plaintiffs have moved to reject the report and findings and to substitute other and new findings.

Plaintiffs have submitted to me numerous objections to the findings and report and have proposed findings / which they claim the Master should have found.

On the argument before me, however, the attorneys for plaintiffs stated that the issue might be decided on the theory that, even assuming that the Master was correct in his findings of fact he was in error in his ultimate conclusion, i.e. that the service of the summons and complaint heretofore made should be quashed, vacated and set aside and that this Court is without jurisdiction because of the fact that the defendant is a foreign corporation and that said corporation was not and is not now doing business within the Southern District of New York and that the individual served with the summons and complaint was not and is not an officer, director, cashier or managing agent of said

corporation or a person authorized to accept service on behalf of said corporation. It, therefore, will not be necessary for me to pass specifically on each finding of fact objected to by plaintiffs.

It appears that the defendant is a Texas corporation with its factories and executive offices located in Dallas, Texas. It is not licensed to do business within the State of New York. It employs a number of salesmen in various parts of the country, including a New York firm, the Sopic Trading Company.

The relationship with the Sopic Trading Company arises out of a written agreement dated December 18, 1942, between the defendant and Eric A. Sorter, Harry F. Hertz and Rudolph Pick, then doing business as the West Coast Sales Co. Subsequently this name was abandoned in favor of Sopic Corporation, of which the three individuals mentioned are sole stockholders. The corporation represented the defendant and others until about June 1, 1944, when the Sopic Trading Co. took over that part of the business of Sopic Corporation which dealt with defendant's products.

In December 1942, the Sopic Corporation leased premises at 1410 Broadway for the purpose of displaying defendant's products and those of another company, the latter line being subsequently dropped.

The samples which are displayed in the showroom are purchased by Sopic from the defendant and the former disposes of them as it sees fit when they are no longer useful.

The name of defendant appears on the door of these premises; and it is listed in the building directory, in the telephone directory and in various trade publications. The name of Rudolph Pick, one of the three individuals mentioned, who is in charge of this office, is listed in the building directory but "Nowheres on any sign does the name of Sopic, Sorter or Hertz appear" [Report, p. 8]. The rent for these premises, including salaries of employees are paid by Sopic Corporation, without any contribution from defendant; this course of conduct is in pursuance of the terms of the contract to which reference has been made.

It further appears that orders solicited by Sopic Corporation and Sopic Trading Co. were and are subject to approval of defendant in Dallas. Pick has no authority to bind the defendant with respect to any contract or obligation, and payment for merchandise purchased by a solicitee of Pick is made directly to Dallas. For these activities Sopic receives a commission of 7% and nothing else.

The defendant supplies stationery with the Nardis letterhead to Pick and 1410 Broadway is listed upon it as defendant's New York showroom. Pick uses this stationery in connection with the defendant's business. The Special Master could "find no proof of any authorization" to sign Nardis' name, but the inference seems unavoidable, even without proof, that the stationery was given to Pick for just such purpose.

Mr. Bernard L. Gold is the president of Nardis Sportswear and he comes to New York every two months and stays here for some period. While in New York, Gold visits piece goods' houses, sometimes visits large retail houses, has discussions with a firm defendant employs to do its advertising, and "drops in" at the showroom at 1410 Broadway. The Special Master found that more than 98% of the purchases of piece goods from New York are consummated in Dallas and that more than 95% of the details in connection with advertising are arranged through correspondence or telephone discussion between New York and Dallas. When Gold visits 1410 Broadway, he discusses business with customers in the showrooms, and shows them samples, but doesn't sell anything.

The defendant employs a New York accounting firm but all work in connection with the books is done in Dallas by this firm; its tax return, however, seems to be made in New York.

It is becoming increasingly difficult to decide situations of this sort for the reason that past criteria are slowly being rendered irrelevant. The Courts appear to be gradually whittling the basis for jurisdiction over corporations transacting business outside of their authorized locale.

Snyder v. J. G. White Engineering Corp., D.C., 60 F.Supp. 789. I agree with Judge Rifkind "that the rule is in process of redefinition and has apparently not yet crystallized in its new form." [page 790 of 60 F.Supp.]

In Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926, Judge Rutledge stated that mere solicitation by an agent should afford a sufficient basis for jurisdiction in cases of this type, but in general the rule has not yet evolved into conformance with his dicta. However, it seems safe to say that solicitation plus some additional activities will suffice to hold the corporation (Snyder v. J. G. White, supra; Barnett v. Texas & P. R. Co., 2 Cir., 145 F.2d 800); even so, it appears that the kind and quantity of the "additional activities" are variables which may or may not be decisive. But compare International Shoe Co. v. State of Washington, 66 S.Ct. 154.

In the instant case Pick's firm solicited business for defendant to the extent of $400,000 (approximately 9% of defendant's total business) in 1944. It maintained a showroom for the sale of. defendant's products. It used the stationery supplied to it by defendant, arranged fashion shows, received and opened mail addressed to Nardis. The defendant's president knew these facts and completely acquiesced in and encouraged this course of conduct.

Of significance is the fact that under the agreement referred to above, which the Master found to be in full force and effect through oral renewals, the defendant agreed to pay $100 per month for a period of six months toward the expenses of maintaining the showroom.

No person could say that the office at 1410 Broadway was not Nardis' unless he had a peculiar knowledge of the facts for there wasn't the slightest indication that it belonged to anyone else but defendant. Cf. Deutsch v. Hoge, 2 Cir., 146 F.2d. 201.

This obviously is another borderline case, but it appears so near in its factual con-tent to an old authority in this Circuit (Davega v. Lincoln Furniture Mfg. Co., 2 Cir., 29 F.2d 164) that I feel inclined to rest it there. As Judge Learned Hand remarked in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 142. "We must step from tuft to tuft across the morass" in this type of problem and select as con-trolling that authority which seemingly most resembles the immediate question.

The Davega case has been the subject of criticism in the past, but it has recently been relied upon completely by the Circuit Court in Deutsch v. Hoge, supra.

I believe that case is controlling and I must follow it until some clear manifesta-tion that the rule to be applied has been definitely changed appears.

The case of International Shoe Co. v. State of Washington, supra, upon which plaintiffs so strongly rely, is not authority for what constitutes doing business within the State of New York. That decision merely held that the State of Washington's conception of the rule as applied to a pro-ceeding for the collection of an unemploy-ment compensation tax was not violative of the due process clause of the Fourteenth Amendment. In addition, the fact that the proceeding concerned a special tax statute might preclude the application of the deci-sion in general jurisdictional matters. It is significant that service of process under the statute may be made by mail when the employer cannot be found within the State; and this would suggest that the "presence" required in order to be subject to the tax is somewhat less than the usual con-tacts requisite to general jurisdiction.

It follows that the service of process was not validly served on Pick for the reason that the defendant is not subject to this jurisdiction.

Special Master's report is confirmed and motion granted.

The Master's compensation is hereby al-lowed in the sum of $700, to be paid as directed in the order of March 2, 1945.