**LANDAAS et al. v. CANISTER CO. et al.**

District Court, S. D. New York.

Nov. 12, 1946.

Jerome Y. Sturm, of New York City (Abraham Fishbein, of New York City, of counsel), for plaintiffs.

I. Gainsburg, of New York City (Bernard Hershkof and Samuel Gottlieb, both of New York City, of counsel), for defendants.

WILLIAM L. LYNCH, Special Master.

To the Judges of the District Court of the United States for the Southern District of New York:

By an order dated April 8, 1946, Honorable Murray Hulbert, one of the United States District Judges for the Southern District of New York, referred the above-entitled cause to the undersigned as Special Master to take proof and report with opinion, findings of fact and conclusions of law on all questions presented by the defendants' motion to vacate the service of process in the action and to dismiss the action upon the grounds that the Court lacks jurisdiction over the defendants and that the suit is not brought in the proper district and that the venue of the action is improperly and erroneously laid in the Southern District of New York.

Full hearings were held and stenographically reported. At these hearings the plaintiffs appeared by Jerome Y. Sturm, Esq. (Abraham Fishbein, of Counsel), the defendants appeared specially by I. Gainsburg, Esq. (Bernard Hershkopf and Samuel Gottlieb, of Counsel), and both oral and documentary evidence was received on behalf of both parties. Thereafter extensive briefs were submitted by counsel for the respective parties. I am filing with this report my Oath as Special Master, the original stenographic minutes of the hearings, all of the exhibits received in evidence except defendants' Exhibit 14 which was withdrawn on consent, and all of the briefs submitted to me.

### Opinion

This action was commenced on October 31, 1945, and is brought by more than one hundred plaintiffs who seek to recover from the defendants overtime compensation and liquidated damages under the Fair Labor Standards Act of 1938, as amended, 52 Stat. 1060, et seq., 29 U.S.C.A. § 201 et seq., for the period March 1, 1941, through June 9, 1944. Before answer, the defendants, appearing specially, moved to vacate the service of process in the action and to dismiss the action upon the grounds that the Court lacks jurisdiction over the defendants and that the suit is not brought in the proper district and that the venue of the action is improperly and erroneously laid in the Southern District of New York.

The service of process relied upon by the plaintiffs and challenged by the defendants is (1) the delivery on November 13, 1945, by one Joseph Goldberg, specially designated for that purpose, of a copy of the summons and complaint to O. L. Coryat at 130 West 42nd Street, New York, New York, on the theory that Mr. Coryat is the

"Managing Agent" of the defendant corporations; (2) the effort by the same Joseph Goldberg, on December 8, 1945, to serve The Canister Company by delivering a copy of the summons and complaint to that defendant or Henry D. Crippen, "a person authorized to accept service on behalf of The Canister Company" at 17 Battery Place, New York, New York, such effort being entirely unsuccessful since neither the named defendant nor Henry D. Crippen could be found at that address; and (3) the delivery on December 14, 1945, by the United States Marshal for the Northern District of New York of a copy of the summons and complaint against both defendants to the Secretary of State of the State of New York.

The main issues before me for decision are (1) whether the defendant corporations, or either of them, are doing business within the State of New York so that they may be sued here; and (2) whether O. L. Coryat or the Secretary of State of the State of New York or Henry D. Crippen is a person upon whom legal process against either of the defendants may be served pursuant to the Federal Rules of Civil Procedure. There is no issue before me relating to the merits of the plaintiffs' claims.

The facts involved are somewhat complex since they concern the corporate existence and activities of three corporations, all incorporated under the laws of the State of New Jersey, and all using the word "Canister" as a part of their corporate names.

The first of the corporations in point of time is The Canister Company of New Jersey (hereinafter sometimes referred to as "Jersey"), incorporated in 1917. That company was engaged in the business of designing, manufacturing and selling canisters or fibre containers. The manufacturing plant was located at Phillipsburg, New Jersey. Practically the entire output of Jersey went to the Bon Ami Company of 17 Battery Place, New York, New York, which both owned and controlled the Jersey Canister Company. Sometime during 1922 Jersey filed with the Secretary of State of the State of New York a certificate qualifying it to do business here and

designating Henry D. Crippen, 17 Battery Place, New York, New York, as the person upon whom legal process might be served in this state.

In 1923 or early 1924 the Bon Ami Company installed in its own plants new machines for making its required supply of canisters and thereupon sought to dispose of the Jersey Canister company plant. One of these efforts was a newspaper advertisement which elicited a response from a Mr. R. T. Garfein (also known as R. T. Gwathmey) who up to that time had had no connection with Jersey. After a series of negotiations Mr. Garfein bought the plant and machinery of Jersey and leased the real estate from Jersey with an option to pur chase. About the same time (April, 1924), Mr. Garfein caused the incorporation of the second company, The Canister Company (hereinafter sometimes referred to as "Company"), and transferred to this new Canister company the assets that he had acquired from Jersey in exchange for all of Company's stock. From that time on, Mr. Garfein has been the sole stockholder of the Company, holding in his own name all shares except qualifying shares, and having possession of the qualifying shares endorsed in blank by the record owners.

Because of the similarity in the names of the two Canister corporations, the formal consent of New Jersey to the use by Company of the new corporate name was required and obtained. After the incorporation of Company some, but not all, of the former employees and officers of Jersey continued with the new company. During 1926 Company acquired from Jersey the real property constituting the balance of Jersey's assets. Thereupon Jersey was dissolved pursuant to the relevant corporation laws of the State of New Jersey.

After the dissolution of Jersey in 1926, no steps were taken to revoke, cancel or withdraw either the certificate of doing business in New York which Jersey had filed in 1922 or the designation of Henry D. Crippen as an agent upon whom process might be served. However, I am satisfied, from the evidence before me, that Jersey has not engaged in business in either New Jersey or New York since 1926, and the proof established that Mr. Crippen had

died several years before the institution of the instant action. Company has never filed any certificate of doing business in the State of New York or any designation of an agent within this state upon whom legal process may be served.

From 1924 to early 1943 Company continued to engage in the canister business at its Phillipsburg plant and also developed a business of designing, manufacturing and selling precision machines. Mr. Garfein, the sole stockholder and President, was in active control of Company's business which increased until it totaled more than $2,000,-000 per year.

Early in 1943, the third Canister Company, the Canister Company, Inc. (hereinafter sometimes referred to as "Inc."), was formed. Its stockholders were eleven employees of Company and its directors and officers were some of the same eleven people. The office of President has never been filled. Mr. Garfein was neither a stockholder, officer nor director of Inc., but he did advance $1,000 which constituted the authorized capital of the new Company and this advance has not yet been repaid. None of the officers or directors of Inc. has ever received compensation as such, but all of them are compensated as employees. The stock was issued to the eleven stockholders without any cash consideration from them but under the terms of a letter agreement which, among other things, obligated them to remain in the employ of Inc. for five years or forfeit their interest in the stock. Inc. obtained Company's consent to the use of the Canister name as Company had previously done from Jersey.

Immediately after its incorporation, Inc. acquired all of the assets of the Company (except cash and accounts receivable) and assumed the liabilities of Company—such assets and liabilities together totaling about $5,500,000—in exchange for an undertaking to pay the liabilities of about $2,000,000 and a bond to pay the balance of approximately $3,500,000 within five years, this bond being secured by a mortgage to Company on all of the assets acquired. Inc. paid no cash at all in the transfer.

As might be expected, Company also obtained as additional security the possession of the outstanding stock certificates of Inc.

and the right to have some or all of the management of Inc. replaced if they did not remain satisfactory to Company which, for all practical purposes, meant remaining satisfactory to Mr. Garfein. Inc. also was prohibited from paying bonuses or certain increases in salary without the formal consent of Company. Inc. has prospered and has already paid off more than $3,000,000 of its obligations, leaving less than $2,500,-000 outstanding. The total business now being done by Inc. is more than $4,000,000 annually and is about equally divided between the canister and precision machine divisions.

Mr. Garfein stayed on for a short time during the transition period but since July, 1943, has not actively engaged in business, merely consulted on major transactions or questions of policy. Since April, 1943, Company has not actively engaged in either the canister or precision machine business. Its functions are to conserve its assets, receive payments from Inc. on account of the outstanding indebtedness and pay liquidating dividends.

The bank accounts of Company are in three New York banks but are inactive except for the receiving of payments from Inc. and the paying out of liquidating dividends to Mr. Garfein. The regular business and active accounts of Inc. are kept in banks in Phillipsburg, New Jersey, and nearby Easton, Pennsylvania, and a so-called surplus fund account is kept in a New York bank. This account is used to pay off interest and mortgage installments. Inc., like Company, never filed a certificate of doing business in the State of New York or a designation of an agent here upon whom legal process may be served. No officer, director or stockholder of either Company or Inc. resides in the State of New York.

In view of the certificate filed by Jersey with the Secretary of State of New York in 1922 and the designation of Mr. Crippen as an agent in this state for the service of process, I am not required to decide whether or not Jersey actually conducted business in New York up to 1926. The dissolution of Jersey in 1926 and its cessation of business at that time makes the status of Jersey at this time unimportant unless the

above-described certificate and designation are binding on either Company or Inc.

In so far as Company is concerned, it had a New York salesman during most of the time from 1927 to 1939. From the evidence before me it appears that these representatives were nothing more than solicitors for Company. The names "The Canister Co. (Cans) or Canister Co." appeared in the Manhattan telephone directory during most of the time between 1927 and 1939, and the address and telephone number corresponded to the address and telephone listings of the respective representatives. Beginning in August, 1939, Mr. Oswald L. Coryat became Company's New York representative and he has continued up to the present time, first, for Company, and, since early 1943, for Inc. It is his activities and the methods by which sales are transacted through him that have given rise to the plaintiffs' claim that he is a "Managing Agent" for the defendants so that service of process in this action upon him on November 13, 1945, constituted valid service on the defendants.

When Mr. Coryat first began to represent Company in New York in 1939, he received a salary of $75 per week and a commission on gross sales. Later, in 1941, he requested a larger weekly salary because of increased expenses, but in lieu thereof agreed to accept an additional payment of $85 per month. This latter arrangement has continued to date. For the first two years he occupied desk space at 11 West 42nd Street for which he personally paid. In 1941 he moved into a single office at 130 West 42nd Street which he leases in his own name and for which he personally pays the rent. He has no employees and uses no stationery bearing any letterhead. He has a telephone listed in his own name and has arranged for an additional listing of "Canister Co. (containers)" for the same address and number, for which he pays an additional monthly charge. He pays for all of his telephone calls except in those cases where someone at the Phillipsburg plant has specifically asked him to telephone and reverse the charges. The building directory at 130 West 42nd Street and a plaque outside his office bear both his own name and The Canister Company name. Mr. Coryat pays a New York City occupancy tax. Neither Company nor Inc. has ever paid a New York State or City occupancy tax, income tax or franchise tax. The defendants have, of course, always paid the required social security tax on the money Mr. Coryat receives from them. Mr. Coryat is not and never has been an officer, director or stockholder of either Company or Inc.

In his efforts to sell canisters, Mr. Coryat covers the New York metropolitan area. He visits prospective customers and tries to interest them in buying canisters. He has samples which he can show to give a general picture of the article he is selling but if the customer wants a sample made to particular specifications, such a sample is made in Phillipsburg and sent directly to the customer. Mr. Coryat has no authority to fix credit terms or prices or to accept orders, and carries on no correspondence with customers. Once a customer is prepared to give an order, he either sends a purchase order to Phillipsburg for acceptance or requests Mr. Coryat to send one in. In the latter situation Mr. Coryat sends a short memorandum to the company in Phillipsburg stating that a named customer has requested that an order be entered for a stated number of canisters made to stated specifications or to the specifications of a prior order and requesting that "our regular acceptance letter in duplicate to cover this order" be sent and the customer "will immediately sign and return the original as his confirmation." No prices or terms are stated in this memorandum.

Upon receipt of this memorandum the company in Phillipsburg writes to the customer on a letterhead which, among other things, carries this warning: "No agreement shall be binding unless accepted at our home office by a duly authorized executive officer of the company." The body of the letter states: "We are very pleased to learn from our Mr. O. L. Coryat that you have instructed him to book your order for [stating amount and specifications]." Then either the phrasing "The order will be entered" or "This order is accepted" is used, stating terms and prices. Each letter ends with the following paragraph:

"In the absence of a formal order from you we are sending this letter in duplicate requesting that you be good enough to confirm this order by signing the original where indicated, returning same to us, retaining the duplicate carbon copy for your files."

At the bottom of the letter the words: "Above order and terms approved and accepted" appears with a place for the customer's signature. In the regular course of procedure Mr. Coryat is sent a copy of this letter when the original and duplicate are sent to the customer.

The hearings before me developed a sharp conflict as to these acceptance letters. One witness testified substantially in conformity with the words of the letter. Two others testified that neither the original nor the duplicate had been signed when sent to the customer; that both the original and duplicate were signed and returned by the customer; that then both were signed by an officer of Canister and that the duplicate was then sent back to the customer. In view of the clear terms of the letter, I am unable to credit this oral testimony and, accordingly, am finding as a fact that the procedure set forth in the letter was followed.

After a sale had been made, the goods were made up in Phillipsburg and shipped directly to the customer. No goods were kept in New York. Invoices were sent from Phillipsburg and payments were received there. Mr. Coryat had nothing to do with collections.

The sales arising from Mr. Coryat's contracts in New York amounted to slightly less than $200,000 in the highest year.

In addition to the above facts, the defendants place substantial reliance on the fact that all of the plaintiffs worked in the machine division rather than in the canister division of the defendant companies; that all of the plaintiffs worked in New Jersey, and all but one lived either in New Jersey or in nearby Eastern Pennsylvania; that the Union contracts under which the plaintiffs worked were executed in and were to be performed in New Jersey; that the defendants have their principal place of business and all of their books and records in Phillipsburg; and that the cause of action upon which the plaintiffs sue arose in New Jersey. I feel that these additional facts have little, if any, weight in determining whether this action was properly brought in this district.

■ The plaintiffs also stress additional facts which I feel are relatively unimportant. For example, in arguing that the defendants are doing business in New York, they point to an item of twenty-five cents due to the City Collector, New York City, as one of the liabilities assumed by Inc. from Company, and the statement in the lease of Mr. Coryat's New York office reading "Office for Tenant engaged in the Canister business," the word "Canister" beginning with a capital C rather than a small c. The plaintiffs also argue that the use of Inc. was just a sham transaction and its corporate entity should be disregarded. They say that its formation and use were merely a taxsaving device for Mr. Garfein. I am unable to make such a determination from the record before me. They say further that Inc. carries the assets it acquired on its books at different values from those used on the books of Company prior to the transfer. While this is true, it developed that the reason for this difference is because Inc. had the assets appraised by an independent appraiser at the time of their acquisition and used the values so fixed for its book entries. Certainly, no adverse inference is warranted by such book entries. The plaintiffs also say that certain form attendance slips bearing the name "The Canister Company" were used by Inc. for more than a year after Inc. began business. Again, it is clear that these slips were used only until the supply was exhausted and their use has no real bearing on the separability of the corporations. Finally, the plaintiffs argue that in a telephone conversation in November, 1945, Mr. Coryat said that he was the "Sales Manager" of the defendants. The testimony as to whether such a statement was made is in sharp conflict but it is unnecessary for me to resolve the conflict since it is clear that such a statement, even if made, would not establish the fact as against the principal. Lillibridge, Incorporated, v. Johnson Bronze Co., 220 App.Div. 573, 574, 222 N.Y.S. 13,

(1st Dept., 1927) affirmed 1928, 247 N.Y. 548, 161 N.E. 177; Vitolo v. Bee Publishing Co., 66 App.Div. 582, 585, 73 N.Y.S. 273 (1st Dept., 1901); Goetz v. Interlake S. S. Co., D.C.S.D.N.Y.1931, 47 F.2d 753, 757; In re Thomas, D.C.N.D.N.Y.1912, 199 F. 214, 224.

■ The question as to whether service of process in this action upon the Secretary of State of New York or the attempted service upon Company or Mr. Crippen (already long deceased) at 17 Battery Place, New York, was effective needs little discussion. Indeed, the defendants claim that this issue has already been decided in their favor by Judge Hulbert and is not within the order of reference. In discussing the plaintiffs' contention regarding the validity of service under the unrevoked certificate of doing business and designation of an agent, filed by Jersey in 1922, Judge Hulbert stated:

"This contention is without merit and this Court rules that the service of process by the U. S. Marshal upon the Secretary of State of the State of New York was not effective to gain jurisdiction over either of the defendant corporations."

In the order of reference all questions presented by the defendants' motion were referred to me as Special Master "except as heretofore determined by this Court." The plaintiffs now contend that the District Judge merely ruled that the service upon the Secretary of State did not ipso facto make effective service but that it was still open for the plaintiffs to show that Company and Inc. were merely continuations of Jersey and did business in New York under the unrevoked certificate and designation previously filed by Jersey. This, of course, means, in effect, that the corporate entities of Jersey and the other two companies, as well as the formal dissolution of Jersey in 1926, must be disregarded. There is not the slightest basis in the evidence for such a holding. Therefore, if the issue be one upon which I should make a determination, I now hold that Jersey ceased to engage in any business in New York or New Jersey in 1926; that it was effectively dissolved in 1926; that the transactions by which Company ultimately acquired the plant and assets formerly owned by Jersey were bona fide in every respect; and that the separate corporate entity of the companies may not be disregarded. It follows that the service of process on the Secretary of State and the attempted service at 17 Battery Place were not effective to confer jurisdiction over either of the defendants.

■ The question as to whether Company was doing business in New York when this action was begun and service made upon Mr. Coryat also needs little discussion. While the plaintiffs, as above indicated, point to several minor factors as indicating that the organization and use of Inc. as a separate corporation were sham, the evidence is overwhelming that the transactions were bona fide and that Inc. and Company must each be recognized as a separate corporate entity. So recognized, there can be no doubt that Company ceased to actively engage in either the canister or precision machine business in April, 1943. Thus, Company was not doing business in New York in the fall of 1945, Mr. Coryat was not its agent at that time, and service of process upon him did not confer jurisdiction over The Canister Company.

■ This leaves for decision the question whether Inc. was doing business here in 1945 and whether Mr. Coryat was its agent, so that service of process upon him was, in legal effect, service upon it. Were it not for the form of acceptance letters used by Inc. and the method of procedure relating thereto set forth in detail above, there would be no doubt at all that Inc. was not doing business to the extent necessary to submit it to suit here. The presence in this state of the surplus fund account of Inc. used only for the purposes indicated and not as a regular business bank account and the mere solicitation of business by Mr. Coryat in New York are, under well-settled authority, quite insufficient to constitute the doing of business. Bank of America v. Whitney-Cent. Nat. Bank, 1923, 261 U.S. 171, 173, 43 S.Ct. 311, 67 L.Ed. 594; Toledo Railways, etc., Co. v. Hill, 1917, 244 U.S. 49, 53, 37 S.Ct. 591, 61 L.Ed. 982; Davega, Inc., v. Lincoln Furniture Mfg. Co., 2 Cir., 1928, 29 F.2d 164, 165, 167; Fowble v. Chesapeake

842

& O. R. Co., D.C.S.D.N.Y.1926, 16 F.2d 504, 505; Philadelphia & Reading Ry. Co. v. McKibbin, 1917, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L.Ed. 710; Green v. Chicago, Burlington & Quincy Ry., 1907, 205 U.S. 530, 533, 534, 27 S.Ct. 595, 51 L.Ed. 916; Amtorg Trading Corporation v. Standard Oil Co., D.C.S.D.N.Y.1942, 47 F.Supp. 466, 468; Lillibridge, Incorporated v. Johnson Bronze Co., supra, 220 App.Div. 573, 576, 222 N.Y.S. 130; Debrey v. Hanna, 1943, 182 Misc. 824, 827, 45 N.Y.S.2d 551. And the maintenance of a New York office by Mr. Coryat rather than by the Canister company seems to me to render inapposite decisions such as Snyder v. J. G. White Engineering Corporation, D.C.S.D.N.Y.1945, 60 F.Supp. 789; International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 161 A.L.R. 1057, and dicta in Hutchinson v. Chase & Gilbert, 2 Cir., 1930, 45 F.2d 139; Barnett v. Texas & P. R. Co., 2 Cir., 1944, 145 F.2d 800 and Georgia v. Pennsylvania R. Co., 1945, 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051.

■ If the acceptance letters which the defendant Inc. uses as a part of its regular procedure in dealing with New York customers were to be construed as mere offers ripening into contracts only upon signature and acceptance by the customer in New York, there might be a strong contention that by reason thereof the defendant was doing business in New York. Concededly, some of the language used in the acceptance letters and the fact that prices and terms are there mentioned for the first time is some indication that the letters are mere offers. However, it seems to me that such a determination would be a distortion of the proper construction which should be accorded to these letters. It is my opinion that these letters are, in fact, acceptances of orders already tendered by the customer and that the signature and return by the customer merely constitutes a written confirmation of a contract already made. This holding accords with the warning contained in the letterhead, the body of the letter prior to the last sentence, and the testimony of some of the witnesses who appeared before me. Therefore, I concluded that at the time this action was instituted and process therefor

was delivered to Mr. Coryat, The Canister Company, Inc., was not doing business in New York.

In any event, Mr. Coryat was not the Managing Agent of Inc. when he was served nor was he any of the class of persons described in Rule 4(d) (3) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. That rule provides that service of the summons and complaint shall be made "upon a domestic or foreign corporation * * *, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *."

■ From the facts detailed above, it is clear beyond doubt that Mr. Coryat was none of the described persons and service upon him was therefore ineffective to cover jurisdiction over the defendant. The Canister Company, Inc. Even if the use of the acceptance letters referred to above required a holding that Inc. was thereby doing business in New York, this conclusion as to service upon Mr. Coryat would not be altered. In such case the doing of business would be grounded on acts performed by persons other than Mr. Coryat and he would still not be a managing or general agent within the principle of the decisions of Snyder v. J. G. White Engineering Corporation, D.C., 60 F.Supp. 789, supra, and Tuchband v. Chicago & A. R. Co., 1889, 115 N.Y. 437, 22 N.E. 360.

■ The final issue before me involves the defendants' alternative argument that they cannot be sued here since they are not residents or inhabitants of this state or district, even if it should be held that they are doing business here. They rely on Section 112, subdivision (b) of Title 28 U.S. Code Annotated, which sets forth a general rule of venue regarding persons not inhabitants or residents of the district where the suit is brought. The plaintiffs contend that the Fair Labor Standards Act confers jurisdiction upon any State or Federal court when it provides that an "action to recover such liability may be maintained in any court of competent juris-

diction." 52 Stat. 1069, 29 U.S.C.A. § 216(b). As an abstract proposition, I believe that the defendants' contention on this point in its broadest implications cannot be sustained. See Moss v. Postal Telegraph-Cable Co., D.C.M.D.Ga. 1941, 42 F.Supp. 807; Booth v. Montgomery Ward & Co., D.C.Neb.1942, 44 F.Supp. 451; Walling v. West Kentucky Coal Co., D.C.W.D.Tenn.1944, 60 F.Supp. 681, affirmed 6 Cir., 1946, 153 F.2d 582. It seems clear to me that if either of the defendants were doing business in this state, such a broad claim of improper venue could not validly be made. But the plaintiffs' contention must be limited in any event to the requirement that there is someone in the place of suit upon whom process may be properly served. In view of my conclusions that the defendants are not doing business here and that Mr. Coryat is not a proper agent for the service of process, the defendants' challenge as to venue must prevail.

An order should be entered granting the defendants' motion in all respects and directing the entry of judgment dismissing the action.

### Findings of Fact.

1. The present action was begun by the plaintiffs on October 31, 1945, for the recovery from the defendants of overtime compensation and liquidated damages under the Fair Labor Standards Act of 1938, as amended, 52 Stat. 1060 et seq., 29 U.S.C.A. § 201 et seq.

2. A copy of the summons and complaint in the action was delivered on November 13, 1945, to O. L. Coryat at 130 West 42nd Street, New York, New York. A copy of the summons and complaint in the action was delivered by the United States Marshal for the Northern District of New York to the Secretary of State of the State of New York on December 14, 1945. An effort was made on December 8, 1945, to deliver a copy of the summons and complaint in the action to the defendant The Canister Company or Henry D. Crippen at 17 Battery Place, New York, New York, but neither could be found at that address.

3. Before answer, the defendants, appearing specially, moved to vacate the service of process in the action and to dismiss the action upon the grounds that the Court lacks jurisdiction over the defendants and that the suit is not brought in the proper district and that the venue of the action is improperly and erroneously laid in the Southern District of New York.

4. The Canister Company of New Jersey was incorporated under the laws of the State of New Jersey in 1917 and, until its dissolution in 1926, was engaged in the business of designing, manufacturing and selling canisters from its factory at Phillipsburg, New Jersey. In 1922, The Canister Company of New Jersey filed with the Secretary of State of the State of New York a certificate of doing business in the State of New York and designated Henry D. Crippen, 17 Battery Place, New York, New York, as an agent upon whom process might be served in any action against it in this State. This certificate and designation have never been formally withdrawn, revoked or cancelled. Mr. Crippen died some years before the institution of the instant action.

5. The Canister Company of New York was owned and controlled by the Bon Ami Company, 17 Battery Place, New York, New York, which was also its principal customer. In early 1924, because the Bon Ami Company had installed in its own plants the machines needed to make its required supply of canisters, The Canister Company of New Jersey sold to Mr. R. T. Garfein (also known as R. T. Gwathmey) all of its assets except its real property as to which it gave a lease with an option to purchase. In 1926 The Canister Company, hereinafter referred to, purchased from The Canister Company of New Jersey the real property constituting the remainder of assets.

6. Since the dissolution of The Canister Company of New Jersey in 1926, it has not engaged in business in either the State of New Jersey or the State of New York.

7. The Canister Company was incorporated under the laws of the State of New Jersey in 1924. The formal consent of The Canister Company of New Jersey was given for the use of the corporate name of The Canister Company. Upon its incorpo-

844

ration, The Canister Company received the assets which Mr. Garfein had acquired from The Canister Company of New Jersey and, in exchange, issued to Mr. Garfein all of its capital stock.

8. From 1924 until April, 1943, The Canister Company engaged in the business of designing, manufacturing and selling canisters and precision machines from its factory at Phillipsburg, New Jersey. Since April, 1943, the only business done by The Canister Company has been the conserving of its assets during the orderly process of liquidation. At all times, all of the capital stock of The Canister Company has been owned either of record or beneficially by Mr. Garfein and he has been in active control of its business.

9. The Canister Company, Inc., was incorporated under the laws of the State of New Jersey early in 1943. The formal consent of The Canister Company was given for the use of the corporate name of The Canister Company, Inc. In April, 1943, The Canister Company, Inc., acquired all of the assets of The Canister Company (except cash and accounts receivable) and assumed the liabilities of The Canister Company in exchange for an agreement to pay said liabilities of approximately $2,-000,000 and a bond to pay The Canister Company within five years approximately $3,500,000, said bond being secured by a mortgage on all of the assets. No part of the total consideration of approximately $5,500,000 was paid in cash.

10. Since April, 1943, The Canister Company, Inc., engaged in the business of designing, manufacturing and selling canisters and precision machines from its factory at Phillipsburg, New Jersey.

11. Since April, 1943, The Canister Company has not engaged in the business of designing, manufacturing or selling canisters or precision machines in either the State of New Jersey or the State of New York.

12. At all times since its incorporation, the stockholders of The Canister Company, Inc., have been eleven former employees of The Canister Company. Mr. Garfein is not included in this group of eleven although he advanced the $1,000 necessary

for the capital of The Canister Company, Inc., and has not been repaid. The said eleven stockholders received their stock without any cash payment by them but under the terms of a letter agreement which, among other things, provided that any stockholder who did not remain as an employee of The Canister Company, Inc., for five years would forfeit his interest in the stock.

13. In the exchange referred to in paragraph 9, supra, The Canister Company also received, as additional security, the physical possession of the stock certificates of The Canister Company, Inc., to be held until the total indebtedness of approximately $5,500,-000 had been paid. The express consent of The Canister Company was required for any bonus payments to employees or increases in the basic compensation of officers of The Canister Company, Inc. It was also provided that the management of The Canister Company, Inc., must remain satisfactory to The Canister Company. By June, 1946, more than $3,000,000 had been paid by The Canister Company, Inc., leaving unpaid less than $2,500,000 on account of said exchange.

14. At no time has either The Canister Company or The Canister Company, Inc., filed with the Secretary of State of the State of New York a certificate of doing business in the State of New York or a designation of an agent within the State of New York upon whom legal process might be served.

15. No officer, director or stockholder of either The Canister Company or The Canister Company, Inc., is a resident of the State of New York.

16. Beginning in August, 1939, and continuing until April, 1943, Mr. Oswald L. Coryat became the salesman representing The Canister Company in the metropolitan area. Since April, 1943, he has represented The Canister Company, Inc., in the same territory. Since 1941, he has received a weekly salary of $75, a monthly payment of $85, and a commission on gross sales. He rents in his own name, uses and pays for his own office at 130 West 42nd Street, New York, New York, where both his own name and The Canister Company name appear

on the Building directory and on a plaque outside his office door. He pays for his own telephone service and also an additional charge for a listing for The Canister Company at the same address and with the same telephone number as his own. He uses no stationary containing a letterhead.

17. Mr. Coryat solicits business by telephone calls or personal visits to prospective customers. He carries on no correspondence with customers. He has no authority to fix prices or credit terms or to accept orders. Samples, if desired by a customer, are made up in Phillipsburg and shipped directly to the customer. After a sale is made, the goods are made up and shipped from Phillipsburg directly to the purchaser. No goods are kept in New York. Invoices are sent from Phillipsburg and payments received there. Mr. Coryat has nothing to do with collections.

18. Orders for canisters are accepted in Phillipsburg. When an acceptance letter (Defendants' Exhibit 15) is used, the original and a duplicate are signed in Phillipsburg, sent to the customer who signs and returns only the original to Phillipsburg. The duplicate is retained by the customer. These acceptance letters constitute mere confirmation of contracts already made.

19. Neither The Canister Company nor The Canister Company, Inc., has ever paid a New York State or New York City occupancy tax, income tax or franchise tax. The social security tax on the payments received by Mr. Coryat have always been paid by whichever Canister company he was representing. Mr. Coryat personally files a return for and pays a New York City occupancy tax.

20. The Canister Company keeps its funds in three banks in New York City but, since April, 1943, these have not been regular business accounts of an active business. The Canister Company, Inc., keeps one surplus fund account in a bank in New York City but this is not an active business account.

21. The sales arising from Mr. Coryat's solicitation in New York amount to less than five per cent of the total sales of the defendants' products.

22. Mr. Coryat is merely a soliciting salesman in New York.

23. The Canister Company, Inc., is not doing business in the State of New York.

### Conclusions of Law.

I. This Court has jurisdiction of the subject matter of this action.

II. This Court has jurisdiction over the plaintiffs but not over the defendants in this action.

III. Under the facts of this case, the separate corporate entity of The Canister Company of New Jersey, The Canister Company or The Canister Company, Inc., may not be disregarded or set aside.

IV. From 1922 to 1926, but not since 1926, The Canister Company of New Jersey was qualified to do business in the State of New York and had, in this State, an agent upon whom legal process might properly and lawfully be served.

V. At the time of the institution of this action and at the time of the attempted service of process in this action, The Canister Company was not doing business in the State of New York so as to subject it to suit here.

VI. At the time of the institution of this action and at the time of the attempted service of process in this action, The Canister Company, Inc., was not doing business in the State of New York so as to subject it to suit here.

VII. At the time of the institution of this action and at the time of the attempted service of process in this action, neither The Canister Company nor The Canister Company, Inc., had an agent within the State of New York upon whom process might be served within the provisions of Rule 4(d) (3) of the Federal Rules of Civil Procedure.

VIII. The attempted service of process in this action was not effective to confer jurisdiction over either of the defendants, The Canister Company or The Canister Company, Inc.

IX. The venue of this action is improperly and erroneously laid in the United States District Court for the Southern District of New York.

X. An order should be entered granting the defendants' motion in all respects and directing the entry of judgment dismissing the action.

Confirmed by District Judge Hulbert.