## HUTCHINSON et al. v. CHASE & GILBERT, Inc., et al.

### No. 38.

Circuit Court of Appeals, Second Circuit.

Nov. 10, 1930.

Merrill, Rogers, Gifford & Woody, of New York City (Joshua D. Jones and Wilson B. Brice, both of New York City; of counsel), for appellants.

Boyd, Chapman & Vreeland, of New York City (John S. Chapman, Jr., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiffs sued the defendant, a Massachusetts corporation, in the state court; the defendant removed for diversity of citizenship, and moved to set aside the service, because it was not doing business within the state of New York. The judge so held, and dismissed the complaint. The plaintiffs do not complain because the judgment was not limited to setting aside the service, and for this reason we treat it as though it had gone no further.

The plaintiffs alleged that the defendant promised in New York to pay for their services in the purchase by it of certain shares of stock, and that they had performed in that state; they demand the contract price, and, by an alternative count, a quantum meruit. Process was served in New York upon the defendant's vice president, who chanced to be there, and the only question is whether the defendant was "present" in such sense that it could be reached in a cause of action arising upon a contract, made in the course of the same activities on which the defendant's supposed "presence" depends. For this reason we have not before us the question discussed in Old Wayne Mut. Life Ass'n v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345; Simon v. Southern Ry. Co., 236 U. S. 115, 130–132, 35 S. Ct. 255, 59 L. Ed. 492; that is, whether without express consent a foreign corporation may be sued upon transactions arising outside the state of the forum.

The defendant's business is that of an "engineering manager" of public utility corporations, of whose shares it owns a controlling interest, either directly, or through a holding company. These it supervises, looking after their property, and acting as engineer, so far as may be necessary to keep them in operation, and to extend their service. Only one of these is a New York corporation, and this has never been actually engaged in business; the defendant's control of it is by the ownership of a majority of the shares of a company which in turn owns its shares. The defendant leases an office in New York at a small rental, keeps a small bank account there, on which it draws from Boston, where all its work is done, and employs a stenographer. It uses these facilities only upon occasional visits to New York, when its officers wish to bargain for the purchase of company shares. These negotiations never result in closing contracts, because all such are referred to the home office, though at times the formal exchange of papers takes place in New York. Its directors and shareholders have always met in Boston, except that once on two successive days the directors met in New York, and on one of these, the shareholders. This was necessary because of the negotiations for the purchase of shares on that occasion. Its name appears in the telephone book, and of course on the office door. On the other hand the contract in suit was made in New York, and certain bonds of a subsidiary company were once offered for sale here by an underwriter or selling agent, whose prospectus was accompanied by a letter, dated at New York and signed by the defendant. In general, the business is conducted in Boston, where are all its records, and where all its officers and directors reside.

■■ The theory of personal jurisdiction in an action in personam is, ordinarily at any rate, derived from the power over the defendant, consequent upon his presence within the state of the forum. McDonald v. Mabee, 243 U. S. 90, 37 S. Ct. 343, 61 L. Ed. 608, L. R. A. 1917F, 458. The service of a capias subjects him de facto to such commands as its courts may utter, though in its stead a notice will usually serve. Such a theory is not really apposite to a corporation, however conceived, and it is only by analogy that it can be used. So long as it was thought of as a fictitious personality, created by the state of its origin, there were logical difficulties—or at least there were thought to be,—in treating it as existent outside the limits of that state. Bank of Augusta v. Earle, 13 Pet. 519, 10 L. Ed. 274. As to jurisdiction, the express consent of a corporation to be sued elsewhere avoided its territorial limitations (Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451;

Pennsylvania F. I. Co. v. Gold Issue Mining Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610; Louisville & N. Ry. Co. v. Chatters, 279 U. S. 320, 323, 49 S. Ct. 329, 73 L. Ed. 711), and beginning with Lafayette Ins. Co. v. French, supra, this has been extended to cases where the corporate activities within the foreign state are such as empower that state to exact such a consent. We are not here troubled by the question whether the foreign state had power to exclude the corporation from the activities relied upon. International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479.

It scarcely advances the argument to say that a corporation must be "present" in the foreign state, if we define that word as demanding such dealings as will subject it to jurisdiction, for then it does no more than put the question to be answered. Indeed, it is doubtful whether it helps much in any event. It is difficult, to us it seems impossible, to impute the idea of locality to a corporation, except by virtue of those acts which realize its purposes. The shareholders, officers and agents are not individually the corporation, and do not carry it with them in all their legal transactions. It is only when engaged upon its affairs that they can be said to represent it, and we can see no qualitative distinction between one part of its doings and another, so they carry out the common plan. If we are to attribute locality to it at all, it must be equally present wherever any part of its work goes on, as much in the little as in the great.

▮ When we say, therefore, that a corporation may be sued only where it is "present," we understand that the word is used, not literally, but as shorthand for something else. It might indeed be argued that it must stand suit upon any controversy arising out of a legal transaction entered into where the suit was brought, but that would impose upon it too severe a burden. On the other hand, it is not plain that it ought not, upon proper notice, to defend suits arising out of foreign transactions, if it conducts a continuous business in the state of the forum. At least, the Court of Appeals of New York seems still to suppose this to be true, in spite of the language in Old Wayne Mut. Life Ass'n v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345, and Simon v. So. Ry., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492. Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 115 N. E. 915. And see Missouri, K. & T. Ry. v. Reynolds, 255 U. S. 565, 41 S. Ct. 446, 65 L. Ed. 788. But a single transaction is certainly not enough, whether a substantial business subjects the corporation to jurisdiction generally, or only as to local transactions. There must be some continuous dealings in the state of the forum; enough to demand a trial away from its home.

▮ This last appears to us to be really the controlling consideration, expressed shortly by the word "presence," but involving an estimate of the inconveniences which would result from requiring it to defend, where it has been sued. We are to inquire whether the extent and continuity of what it has done in the state in question makes it reasonable to bring it before one of its courts. Nor is it anomalous to make the question of jurisdiction depend upon a practical test. This for example is avowedly the case as to corporations engaged in interstate commerce. Davis v. Farmers' Co-operative Equity Co., 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996. No doubt there are governmental reasons for protecting such corporations from local interference; yet, as mere matter of municipal law, the loss and inconvenience to ordinary companies from being sued wherever they may chance to have any dealings whatever, cannot properly be ignored, and may constitute a test of jurisdiction, just as they do of venue, really a kindred matter. If so, it seems to us that nothing is gained by concealing what we do by a word which suggests an inappropriate analogy, that is, the presence of an individual who may be arrested and compelled to obey. This does not indeed avoid the uncertainties, for it is as hard to judge what dealings make it just to subject a foreign corporation to local suit, as to say when it is "present," but at least it puts the real question, and that is something. In its solution we can do no more than follow the decided cases.

Possibly the maintenance of a regular agency for the solicitation of business will serve without more. The answer made in Green v. C., B. & Q. R. R. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916, and People's Tob. Co. v. Amer. Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537, perhaps becomes somewhat doubtful in the light of International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, and, if it still remains true, it readily yields to slight additions. In Tauza v. Susquehanna Coal Co., supra, there was no more, but the business was continuous and substantial. Purchases, though carried on regularly, are not enough (Rosenberg Co. v. Curtis Brown Co., 260 U. S. 516,

43 S. Ct. 170, 67 L. Ed. 372), nor are the activities of subsidiary corporations (Peterson v. Chicago, R. I. & P. Ry. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634), or of connecting carriers (Philadelphia & Read. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710). The maintenance of an office, though always a make-weight, and enough, when accompanied by continuous negotiation, to settle claims (St. Louis S. W. Ry. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486), is not of much significance (Davega, Inc., v. Lincoln Furniture Co., 29 F.(2d) 164 (C. C. A. 2)]. It is quite impossible to establish any rule from the decided cases; we must step from tuft to tuft across the morass.

In the case at bar, the defendant has never done any continuous business in New York. It has come here on occasion, when it found likely opportunities to buy control in a company which would fit in with its general plans. Had its business been primarily in dealing in the shares of public utility companies, and had it had a local agent, whose duty it was to bargain for these, it may be that it could not escape, merely because he had no power to close purchases here, but must refer them to the home office. This was not the case. The acquisition of a new company whose business the defendant might supervise was of necessity sporadic; it was no part of its ordinary activity. While the chief holding company controlled by the defendant in turn controls indirectly nearly a hundred smaller companies, it by no means follows that to acquire all of these the officers had to go to New York. On the contrary, it is extremely likely that in case of most of them the shares were locally held. Only one of them was in New York and this had never done any business. So far as appears, the visits to New York were infrequent, and concerned only the holding units, which are few. There is no evidence that it ever borrowed money in New York, if that be material; the sale of certain bonds of a holding company, in the control of another company which the defendant in turn controlled, was immaterial, and no more was shown. None of this, and not all of it, seems to us a good reason for drawing the defendant into a suit away from its home state. In the end there is nothing more to be said than that all the defendant's local activities, taken together, do not make it reasonable to impose such a burden upon it. It is fairer that the plain-

tiffs should go to Boston than that the defendant should come here. Certainly such a standard is no less vague than any that the courts have hitherto set up; one may look from one end of the decisions to the other and find no vade mecum.

Judgment affirmed.