**JOHNS v. BAY STATE ABRASIVE PRODUCTS CO. et al.**

No. 4874.

United States District Court
D. Maryland. Civil Division.
March 24, 1950.

Philip V. Hendelberg, Baltimore, Md., W. Hamilton Whiteford, Baltimore, Md., Eugene A. Alexander, III, Baltimore, Md., for plaintiff.

David R. Owen, Baltimore, Md., Richard F. Cleveland, Baltimore, Md., Semmes, Bowen, & Semmes, Baltimore, Md., for Reed Roller Bit Co.

Charles C. G. Evans, Baltimore, Md., Jesse Slingluff, Jr., Baltimore, Md., Marbury, Miller & Evans, Baltimore, Md., Michael Crocker, Baltimore, Md., for Bay State Abrasive Products Co.

CHESNUT, District Judge.

This case was originally instituted in a Maryland State Court and removed to this

court on the ground of diversity of citizenship. The defendants, both foreign corporations, have severally moved to dismiss the suit on the ground that they are respectively not subject to the jurisdiction of the court as they are foreign corporations not doing business in the State. The motions have been heard upon affidavits and oral evidence submitted by the respective defendants.

While the merits of the case are not presently to be considered, it will help to an understanding of the question involved on the motions to state very briefly the nature of the complaint which covers five long closely typewritten pages. Very briefly summarized, it is this. The plaintiff was employed as a mechanic by Henry M. Patterson, trading as the Eastern Sales and Engineering Company, located in Baltimore City, which was engaged in manufacture of shafts for light poles. In the manufacture of the shafts the metal is rolled into tubular form requiring welding of the two edges of metal; and further requiring the removal of the excess welding material which accumulates in the process. Patterson made inquiry from the local representative (a Mr. Haines) of one of the defendants, the Reed Roller Bit Company, as to the best type of grinding wheel to be used on one of the latter's pneumatic grinding machines. Haines recommended the use of an abrasive wheel manufactured by the other defendant the Bay State Abrasive Products Company. Thereafter Patterson bought a Reed Roller grinding machine and also separately a wheel made by the Bay State Company from the Carey Machinery and Supply Company, an independent Baltimore dealer. During the use of these two instruments in combination, in the course of his mechanical work for Patterson, the wheel shattered and personally injured the plaintiff. He was given a weekly award against his employer under the Maryland Workmen's Compensation Law, Code Supp.1947, art. 101, § 1 et seq., and, no suit having been brought by the employer or its insurance carrier, this suit for alleged joint or single negligence was brought by the employee Johns against the defendants jointly or separately.

From the evidence in support of the motions I find the following facts. The Bay State Abrasive Products Company is a Massachusetts corporation which has never qualified or registered to do business in Maryland. It has not appointed any agent for service of process in the State, nor was any agent or representative of it served with process in Maryland, and it has not waived the service of such process by voluntary appearance. The suit is not based on any action of that defendant within Maryland. The principal office and factory of the corporation are located in Westboro, Massachusetts. It has no resident agent in the State of Maryland nor any office in the State. It is not listed in any telephone directory in the State and has no bank account or financial transactions therein. It has no property located in Maryland other than that in transit to customers from outside the State. It has a sales promotion agent named C. A. Ahlstrom whose residence and office therein is located in Glenside, Pennsylvania. He is paid by a salary, commission and expense allowance for sales promotion work in part of Pennsylvania, Maryland, Virginia and possibly other nearby States. His duties are solely those of sales promotion. He has no authority to accept orders and does not in fact carry order forms. He visits such sales prospects as he considers likely to be interested in the purchase of Bay State abrasive tools. Orders for the purchase of the Company's products are sent directly by the purchaser to Westboro, Mass., or occasionally sent in by Ahlstrom but he does not accept any of the said orders or accept any payment thereon. All bills therefor are sent from the office of the Company in Westboro, and all payments there made to it. He has no authority to make any contracts for the Company but only to promote sales of its products and demonstrate their utility to respective customers. He estimated that he spent only one-fifth of his time in Maryland. The gross annual sales of the Bay State Company are about $5,-

000,000 and the annual sales in Maryland about $10,000 to $15,000. Its products are sold in this State by wholly independent dealers who purchase from the Company directly by interstate shipment.

The facts with regard to the Reed Roller Bit Company are quite similar. It is a Texas corporation with its principal office and plant at Houston, Texas. It is a large producer of oil-well drilling bits. A few years ago it bought out the Cleveland Tool Company engaged in the manufacture of various pneumatic tools, and conducts the business thereof from Houston as the Cleco Division of the Reed Roller Bit Company. The Company has no warehouse in the State of Maryland, no bank account, no telephone listing and no office. It has never appointed a resident agent for Maryland nor carried any stock of goods in the State. The sales of its product here are made by two dealers, sometimes called distributors, whose only relations to the Reed Roller Company are for the purchase of tools at an allowed dealer's discount. One of these dealers is the Carey Machinery and Supply Company, 119 E. Lombard Street, Baltimore, Maryland, who are dealers in many products in addition to those of the Reed Roller Company. Purchases are made by the dealers from the Houston office of the Reed Roller Company and are shipped to such dealers f. o. b. Houston with freight allowance. The Reed Roller Company has no interest of any kind in the goods sold after delivery and no control over sales made by the dealers or financial interest in their success. No sales are made on a consignment basis. The annual gross sales of the Company for purchases in the United States was approximately $15,000,000; while the average gross purchases in the State of Maryland was about $15,000, or about 1% only of the total dollar sales in the United States.

The Reed Roller Company maintains an office and warehouse in Newark, N. J., with a supervisory representative (one Clarke) who is in charge of the whole northeastern territory for the Company. Clarke has under him six or seven salesmen having different territories in the whole of Clarke's northeastern territory. One of these salesmen or sales promotion representatives is the formerly named Haines whose sales promotion territory includes Maryland, the District of Columbia, Virginia and a part of North Carolina. Haines presently resides at Kingsville, Baltimore County, Maryland, but he is not required to reside in Maryland. He is paid by a flat salary, a commission and an expense allowance. He was requested by some one to see Mr. Patterson, the employer of the plaintiff, for suggestions or advice as to suitable tools for the work heretofore mentioned. He advised the use of a Bay State abrasive wheel to be used in connection with a power pneumatic grinding tool made by the Reed Roller Company. The two instruments were bought by Patterson from the Carey Machinery and Supply Company. They were not sold by Haines and apparently Haines never saw either of the particular instruments. The Company has supplied Haines with a Company owned and registered automobile for solicitation work in his territory.

When the suit was filed in the State Court service of process was made upon the Maryland State Tax Commission. Service was not made or attempted to be made upon either Ahlstrom or Haines as soliciting agents of the respective defendants. The State Tax Commission in turn notified the respective defendants by mail of the pendency of the suit. Such notices were actually received; but as the service was in the nature of a substituted service only, it was obviously ineffective to subject the defendants to a possible liability in personam unless there is some constitutionally valid statute of the State of Maryland applicable to the conditions.

The Maryland Foreign Corporation laws are to be found in Flack's Annotated Code of 1939 with supplements thereto issued in 1943 and 1947. Section 111, art. 23, as now found in the 1947 edition, prescribes procedural regulations with regard to process against domestic and foreign corporations. Subsection (d) provides: "If * * * any foreign corporation required by any statute of this State to have a resident agent, or any foreign corporation

658

subject to suit in this State under Section 119(d) of this Article, has not a resident agent, or has one or more resident agents and two unsuccessful attempts have been made on different business days to serve process upon each of its resident agents, such corporation shall be conclusively presumed to have designated the State Tax Commission as its true and lawful attorney authorized to accept on its behalf service of process in the action in which such process issued, and in such case such process may be served upon the State Tax Commission as the true and lawful attorney of such corporation."

Section 120(a) of Article 23 provides that "Every foreign corporation *doing intrastate or interstate or foreign business in this State* * * * shall have at least one resident agent in this State whose name and address, as such, have been certified to the State Tax Commission, and also a mailing address which has likewise been certified to the State Tax Commission. * * * Service of process upon any such agent of a foreign corporation shall bind such foreign corporation in any action in which it is subject to suit in this State." (Italics supplied.)

Neither of the defendants in this case has appointed a resident agent as it is their position that they are not doing any business in this State.

In this situation it is necessary to refer to the provision of section 119(d) of Article 23 which reads as follows: "Every foreign corporation shall be subject to suit in this State by a resident of this State or by a person having a usual place of business in this State on any cause of action arising out of a contract made within this State or liability incurred for acts done within this State; *whether or not such foreign corporation is doing or has done business in this State.*" (Italics supplied.)

The first question arising on the motions is whether the service on the Maryland State Tax Commission was effective to bring the defendants into the Maryland State Court. As the service made was a substituted and not a personal service upon authorized agents of the corporations re-

spectively, the question arises whether the defendants or either of them are in any of the categories mentioned in section 111(d). The two categories mentioned are (1) a foreign corporation required by statute to have a resident agent or (2) under section 119(d) a foreign corporation making a contract or incurring a liability for acts done within this State, "whether or not such foreign corporation is doing or has done business in this State." As the foreign corporations did not have a resident agent they were not in the first category if they were not "doing business" in this State. But it will be noted that in the second category literal terms of section 119(d) subject them to the suit if the cause of action sued upon was based upon a contract or a tort occurring in this State *even if they were not doing business in this State*. The first question, therefore, as to the validity of the service necessarily splits into two parts, one, whether the foreign corporations were engaged in business in the State in the statutory and constitutional meaning of that term, and second, if not, then is the cause of action sued upon one which as to them jointly or severally or respectively constituted a contract made or a liability incurred for acts done within the State.

As to the first part, the suability of foreign corporations by the provisions of the Maryland statute are predicated on the underlying condition that they are "doing business" in this State. As the phrase "doing business" is not defined in the statutes, we must look to the decisions of the Maryland Court of Appeals for the proper scope and application of that phrase. In short summary, it is found that the mere solicitation of business without other substantial activities within the State does not constitute "doing business" with the effect of making the foreign corporation amenable to the foreign corporation laws of the State.

The first important Maryland case applying "doing business" was Central of Georgia Railway Co. v. Eichberg, 1908, 107 Md. 363, 68 A. 690, 14 L.R.A., N.S., 389. It was there held that the Railway Company, not having any trackage in Maryland, was doing business here because it had a traffic agreement with the Merchants

& Miners Transportation Company, which was authorized as the Railway's agent to issue through bills of lading via the M. & M. S. S. Co., to Savannah, there connecting with the Central of Georgia; with collection of the freight charges made by the M. & M., and proportionate division thereof remitted by it to the Central of Georgia. Furthermore both Companies jointly employed an agent for the solicitation of business who maintained an office in Baltimore City in the large office building occupied by the M. & M. with appropriate display of lettering featuring the Central of Georgia Railway Company's name. But in the later case of Stewart Fruit Company v. Chicago, M. & St. P. R. Co., 143 Md. 56, 121 A. 837, it was held that the Chicago, M. & St. P. R. R. was not amenable to suit in Maryland by service on the B. and O. R. R. Company, as its agent in Maryland for solicitation of such freight carriage, although the B. and O. had issued through bills of lading and at one time the Chicago Company had sent its own agent into Maryland to solicit through shipments over its line. In State, to Use of Bickel v. Pennsylvania Steel Co., 123 Md. 212, 91 A. 136, the Steel Company, a foreign corporation, was held to be doing business in Maryland by reason of bridge construction in the State and the appointment of a general agent in Baltimore paid by commission upon all sales from business in the South, the agent for a long time having occupied offices with the name "Baltimore Office, Penna. Steel Co., R. C. Hoffman Co. Southern Sales Agent". But in Baden v. Washington Loan & Trust Co., 133 Md. 602, 105 A. 860, 861, it was held that a foreign trust company was not engaged in business in Maryland by reason of a sale made under a power in a will to the trust company. In the latter case Judge Urner for the Court reviewed the general law upon the subject of what constitutes "doing business" by a foreign corporation in another State, and quoted with approval 12 Ruling Case Law, p. 69: "It seems to be the consensus of opinion that a corporation, to come within the purview of most statutes prescribing conditions on the right of foreign corporations to do business within the state, must transact therein some substantial part of its ordinary business, which must be continuous in the sense that it is distinguished from merely casual or occasional transactions."

In another case, Grove Lime Co. v. Wolfenden, 171 Md. 299, 303, 188 A. 794, 795, the Court quoted with approval from the general law upon the subject appearing in 60 A.L.R. 1031; 101 A.L.R. 133, that "The mere soliciting and obtaining of orders within a State by the agent of a foreign corporation, for goods to be shipped into the State to the purchaser, do not amount to doing business within the State so as to render the corporation amenable to service of process therein."

In the particular case the court was applying the special Maryland statute with regard to venue which provided that a defendant must ordinarily be sued in the county in which he resides. The Lime Company had its principal office in Frederick County but was sued in Baltimore City. It was held that the latter court was without jurisdiction by virtue of the Maryland statute even though the Lime Company had by agents extensively solicited business in the City and other Counties of the State. And in Bank v. Charles Meyers & Co., 1943, 182 Md. 556, 564, 35 A.2d 110, this view of the applicable law was reaffirmed.

The federal decisions, especially those in this Circuit too numerous to separately review, are equally if not more explicit that mere solicitation of business without other intrastate activities of a foreign corporation (sometimes referred to as solicitation plus) does not constitute doing business, thus subjecting itself to the State forum. Cannon v. Time, Inc., 4 Cir., 115 F.2d 423, 425; Knott Corp. v. Furman, 4 Cir., 163 F.2d 199, 205; La Porte Heinekamp Motor Co. v. Ford Motor Co., D.C., 1928, 24 F.2d 861, 864, Judge Soper, when District Judge; Edgewater Realty Co. v. Tennessee Coal, Iron & R. Co., D.C., 1943, 49 F.Supp. 807, 814, 816, Judge Coleman. Cf. Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926, one Judge dissenting. Two recent cases in the Supreme Court, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154,

90 L.Ed. 95, 161 A.L.R. 1057, and United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, announce different and somewhat broader approaches to the interpretation of what constitutes doing business by a foreign corporation sufficient to subject itself to the forum in a State other than that of its incorporation. But both these cases arose under such particular circumstances, legal and factual, that I do not think they can be interpreted as changing the theretofore well-established rule that mere solicitation is not sufficient as applied to the comparatively simple and usual features of the instant case.

In the Shoe Company case the court was dealing with the assertion by the State of Washington that its unemployment tax was applicable to a foreign corporation. It employed 13 salesmen resident in the State who for several years continuously solicited orders for shoes to be accepted in and delivered from other States. They were paid by commissions which for each year totalled more than $31,000 indicating a very large annual gross business within the State. An Act of Congress expressly removed any question of burden on interstate commerce from the cause. The opinion of the court by Chief Justice Stone, after reviewing many federal decisions dealing with the due process clause of the 14th Amendment in its application to the doing business by a foreign corporation in another State, concluded that a simple mechanical or quantitative test as to the activities of a foreign corporation should not mark the boundary line between subjection to and immunity from a statute; and the test should not be merely whether the activity was a little more or a little less; rather the judicial approach to the decision should be "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that the state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. at page 319, 66 S.Ct. at page 160.

It was held under the facts that the foreign corporation was subject to the State jurisdiction.

In the Scophony case, on facts quite dissimilar to the present and on the basis of activities of the foreign corporation far beyond those of the instant case, it was held that a British corporation was subject to process in the Southern District of New York under the special venue provision of section 12 of the Clayton Act, 15 U.S.C.A. § 22, which permits suit in any district where a corporation "may be found or *transacts business*". (Italics supplied.) Basing the conclusion particularly on Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L. Ed. 684, it was held that section 12 of the Clayton Act with respect to venue was an enlargement of section 7 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 7, and that the phrase "transacts business" in the Clayton Act had a broader meaning than "doing business" in the Sherman Act and that the former should be gratified "if, in fact, in the ordinary and usual sense it (the foreign corporation) 'transacts business' therein of any substantial character." [333 U.S. 795, 68 S.Ct. 861]

■ Applying the principles of the Maryland decisions (as I have indicated the federal decisions are to the same effect as applied to this case) it is clear that the activities of the two defendants within the State of Maryland did not constitute "doing business" therein within the meaning of the Maryland statute with which we are dealing. Except for the solicitation of orders neither defendant had any activities within or contacts with the State or transacted any business of substantial character in the usual sense. In the case of the Bay State Company there was nothing whatever other than mere solicitation and that of itself to a very limited and minor extent. And in the case of the Reed Roller Company there were no contacts with the State other than solicitation except possibly the ownership by the corporation of a Maryland registered automobile provided for its agent to facilitate his work in Maryland and other nearby States. For these reasons I hold that neither defendant was subject to the jurisdic-

tion of the State Court by virtue of doing business within the meaning of Article 23, § 111(d) and section 120(a) of the Maryland Code.

■ But the plaintiff contends that even if neither defendant was "doing business" in Maryland, nevertheless both defendants were subjected to suit here by reason of section 119(d) of Art. 23 above quoted. By that section jurisdiction is based on the making of a contract or the incurring of liability by a transaction within the State, even if the corporation was otherwise not doing business herein. Each defendant contends the section as applied to the facts of this case would be a violation of the due process clause of the 14th Amendment. This objection is clearly good with respect to the Bay State Company which, under the facts stated, made no contract and had no transaction within the State in relation to the tort liability alleged in the plaintiff's complaint.

But section 119(d) in its application to the Reed Roller Company poses a question of real difficulty under the due process clause. Section 119(d) is said to be unique in that it has no parallel in comparative State statutes affecting foreign corporations. It was first enacted in Maryland in 1937. Under the Maryland system we unfortunately have no legislative history of its origin and there has been no Maryland decision construing or applying it. Indeed the only judicial reference to it which has been called to my attention is a brief expression by Judge Coleman in the Edgewater case, supra, 49 F.Supp. at page 816. In that case, after finding that the foreign corporation was on the particular facts doing business in Maryland, the opinion concluded that it was unnecessary to consider the constitutional application of section 119(d) but added the comment that "it is difficult to see how the broad provisions in the Maryland law just referred to can be upheld, in the face of the requirements for due process upon which our conclusion is based." It will be noted this comment was made in 1943, since when there has been a considerable amount of judicial consideration of the general subject matter of the suability of foreign corporations. I think it may

be said that in federal jurisdiction the general tendency has been to expand the amenability of foreign corporations to suits in States other than that in which they were incorporated and of which they were long alone considered an inhabitant within the meaning of the general venue statute. See Gibson v. United States Lines, D.C.Md., 74 F.Supp. 776, 778. We are now very familiar with the decision in the Neirbo case, (Neirbo Co. v. Bethlehem Shipbuilding Corp.), 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437, and its followers in principle (not limited to diversity cases only) in which it has been held that foreign corporations by appointing a State resident agent on whom process could be served thereby express their consent to be sued in both federal and state courts therein. And the New Judicial Code effective September 1, 1948, for the first time provided in section 1391(c) that "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is *doing business,* and such judicial district shall be regarded as the residence of such corporation for venue purposes." (Italics supplied.)

While application of the above provision of section 119(d) when literally applied in some cases might infringe the due process clause, I hesitate to reach the conclusion that there are not other situations in which its application may be consistent with due process. By its terms the section applies only in favor of a resident plaintiff or one having a usual place of business in this State, and then only with respect to "a contract made within this State or liability incurred for acts done within this State."

Contemporary nonjudicial legal commentary in Maryland has not been unfavorable to the at least limited validity of section 119(d). In 1938 Professor Reiblich of the University of Maryland Law School published a comprehensive and thoroughly considered article in the Maryland Law Review, Vol. 3, pp. 35-75, on Jurisdiction of Maryland Courts over Foreign Corporations under the Act of 1937. The present section 119(d), then numbered 118(d), was carefully considered (pp. 67 to 72). The author reached the conclusion that the section could

be legally sustained 'as against. objections based on either the commerce clause or the due process clause of the Federal Constitution. And ·in an extended review of the 1937 Act Mr. Herbert Myerberg of the Baltimore Bar, published in the Baltimore Daily Record for October 15, 1937, seems to have reached the same conclusion. Speaking of the present section 119(d) he says "This provision is a complete innovation. * * * The jurisdiction of our courts over foreign corporations is thus extended to a large variety of situations in which, heretofore, residents of this State were required to pursue the corporation to its domicile or to some other State wherein it was regularly engaged in business. The general extension contained in the new. statute of the right to sue foreign corporations engaged in interstate and foreign commerce raises an interesting question as to whether the assumption of jurisdiction in the instances provided for constitutes a burden upon or interference with such commerce. The problem is a difficult one, and the Supreme Court decisions do not offer a definite solution, except in one or two of the numerous situations which might arise. Thus it appears to be settled that a suit by a resident plaintiff against a foreign corporation on a cause of action which arose within the State does not burden interstate commerce, even though the corporation was not doing business here." Citing State of Missouri ex rel. St. Louis, Brownsville & Mexico R. Co. v. Taylor, 266 U.S. 200, 207, 45 S.Ct. 47, 69 L.Ed. 247, 42 A.L.R. 1232, which, however, was a nonresident attachment case in a State Court.

 Without unduly extending this opinion, the result of my reflection about the statute is that it can properly be given valid application to a limited extent. Consistent with the approach adopted by Chief Justice Stone in the Shoe Company case, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, I think it will be necessary to test the proper application of the statute by a process of inclusion and exclusion hereafter. to the several factual situations as they are presented. The conclusion in each case must be based upon a fair consideration of all the relevant fac-

tors, including, among others, the nature and extent of the corporation's actual activities within the State, and whether sporadic or merely casual or continuous over a substantial period of time, and its consequent points of contact or lack thereof with the State, the nature of the particular transaction, contract or tort relied upon by the resident plaintiff occurring within the State, and how such activities affect the general policy of the State with regard to the subject matter, and also importantly the relevant inconvenience to the respective parties dependent upon whether the litigation should be sustained in the local forum or only in some other jurisdiction. See Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 45 F. 2d 139, 141, opinion by Judge Learned Hand; and International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S.Ct. 154. The ultimate test of the amenability of the foreign corporation to suit in the local forum, as expressed in the earlier cases, was that its business activities must have been to such an extent that the reasonable inference to be drawn was that it could be said to be "found" or to be "present" within the State. A newer approach is expressed by Chief Justice Stone in the Shoe Company case, 326 U.S. at p. 320, 66 S.Ct. at page 160, that the foreign corporation's activities must be such as to "establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there."

 It must now be determined whether the situation presented by the instant case makes it reasonable and just to apply section 119(d). The legal sufficiency of the complaint is not presently involved. While not entirely definite and explicit, nevertheless considered in the light most favorable to the pleader, it seems to present an action for a tort occurring in Maryland by the agent of a foreign corporation allegedly within the scope of his authority, arising from a careless or ignorant misrepresentation as to the safety and utility of an instrument of his principal's manufacture in combination with an adjunct tool of the

other defendant, resulting in serious harm to the resident plaintiff. It further appears that the agent in question, although not authorized to accept orders but merely to solicit them, had been regularly and continuously acting in that capacity for a year or more past, and in the course of his solicitation of orders not infrequently was called upon by local prospective customers for some advice as to utility and sufficiency of the defendant's product. My conclusion of law is that these circumstances make it just and not unreasonable to require the foreign corporation to defend the suit here in the absence of further facts which would indicate the great relative inconvenience to the defendant. The foreign corporation is here represented by highly competent and experienced counsel; apparently all the witnesses to the particular occurrence described in the plaintiff's complaint are resident in or near Baltimore and, so far as appears, the only nonresident witnesses seemingly likely to be called are superior officers or agents of the corporation whose testimony might be required with regard to the scope of authority of the agent and the sufficiency of the Company's product. On the other hand it would obviously be a very great inconvenience and handicap to the injured plaintiff employee if obliged to institute and prosecute a suit for damages against the foreign corporation in the far distant State of Texas. It is also not irrelevant to note that there will be no greater inconvenience to the defendant in defending this particular suit here than if, for instance, it had been sued for an alleged negligent injury caused by its agent in the use of the defendant's automobile in Maryland. Under other applicable Maryland statutes, with respect to the liability of nonresident individuals for the negligent use of Maryland highways, nonresidents are amenable to suit here upon service of process upon the Secretary of State, and notice by registered mail to the nonresident. Art. 66½, § 106(a), Md.Ann. Code 1947. See Steele v. Dennis, D.C.Md., 62 F.Supp. 73, cited in Knott Corp. v. Furman, 4 Cir., 163 F.2d 199, 205.

■ Counsel for the Reed Roller Company, correctly contends that "a foreign corporation cannot be sued because of a single act done in the State, unless such act is subject to the State police power"; and supports the contention with impressive authority. Rosenberg Bros. & Co. v. Curtis Brown Co., 1923, 260 U.S. 516, 43 S. Ct. 170, 67 L.Ed. 372; Doherty & Co. v. Goodman, 1935, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097; Hutchinson v. Chase & Gilbert, Inc., 2 Cir., 1930, 45 F.2d 139; Crook v. Girard Iron & Metal Co., 1898, 87 Md. 138, 39 A. 94, 67 Am.St.Rep. 325. See also Restatement of Conflict of Laws (1948 Supp.) §§ 84, 88 and 89, McWhorter v. Anchor Serum Co., D.C.Ark., 72 F.Supp. 437; and particularly the discussion in International Shoe Co. v. Washington, 326 U. S. 310, 317–319, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057. But, as above pointed out, there presently appears to be a basis for the view that the activities of the foreign corporation, although not amounting to doing business within the meaning of the Maryland statute, were more than limited to a single isolated transaction, as illustrated in some of the cases just referred to. Nor were the courts dealing with such a State statute as here exists, although of course it is not doubted that the State statute must yield to the superior requirements of the Federal Constitution as to due process if the facts of the particular case bring it into play.

The final conclusion is that the motion to dismiss the Bay State Abrasive Products Company must be *granted* on jurisdictional grounds and therefore without prejudice; and the motion to dismiss as to the Reed Roller Bit Company must be *overruled,* but without prejudice to its further consideration if, in the development of the case on the facts, the situation heretofore above assumed to exist with respect to the circumstances of the case bearing on jurisdiction are clearly shown to be incorrect; as of course it is a well-known rule that whenever absence of jurisdiction develops in a federal litigation the court should sua sponte, if necessary, dismiss the case.

Counsel may submit the appropriate orders in due course.