**SKUPSKI**

v.

**WESTERN NAVIGATION CORP. et al.**
(United States et al. third party defendant).

United States District Court
S. D. New York.

March 31, 1954.

Sterling & Schwartz, New York City, for plaintiff.

Hanrahan & Brennan, New York City, for defendants and third party plaintiffs.

Alexander & Ash, New York City, for third party defendant, Maher Stevedoring Corp.

NOONAN, District Judge.

A third party defendant, Maher Stevedoring Corporation, moves to quash the return of service and to vacate the third-party summons and complaint in this action on the ground that it is not subject to service of process within the State of New York.

The moving party is a corporation organized and existing under the laws of the State of New Jersey. Its principal office is located in Port Newark, New Jersey. It has no office of its own for the conduct of its business in New York. Nevertheless, certain facts that must be considered include the following:

1. Maher Stevedoring Corporation, the New Jersey corporation, is wholly owned by Michael E. Maher who is also the sole owner of a New York corporation which formerly had the identical name as the New Jersey corporation but whose name was changed to Maher Stevedoring Co., Inc., two months after service in this action.

2. It was the intention of Mr. Maher, sole owner of both corporations that the New York corporation was to "sub-con-

tract" work to be done in New Jersey to the New Jersey corporation.

3. The New Jersey corporation paid the New York corporation $500 anticipatorily "in connection with solicitation of business in New York."

4. The contract covering the work involved in this suit was signed by the New Jersey corporation at the New York Port of Embarkation, 58th Street and First Avenue, Brooklyn, New York.

5. The New York corporation maintained an office and telephone listing in 17 Battery Place, New York City, at which place the name Maher Stevedoring Corporation was listed on the building directory and on the door of the office. An arrangement was made in the New York office that important telephone messages should be relayed to Mr. Maher in New Jersey.

6. The New Jersey corporation has worked for the Marine Transport Lines, Funch Edye & Co., the Port of New York Authority, the United States Lines, Lloyd Brasiliero, Luchenbach Steamship Co., Boise-Griffin Steamship Co., the West Coast Line and others, each of which have no principal place for business in New Jersey, but instead have their principal places of business in New York.

7. The insurance broker for the New Jersey corporation was located in New York City.

8. The New Jersey corporation is a member of the New York Shipping Association.

9. In connection with his frequent trips to New York in 1953 and 1954, Mr. Maher stated in his deposition, "I would say that at times it was (on) the business of the New Jersey corporation, and at times it was (on) the business of the New York corporation, depending upon what the occasion for coming here happened to be." And in connection with his trips to New York in 1952, he stated, "In 1952, most of my attendance in New York, in the latter part, I change that, the early part of 1952, would have been for the Jersey corporation. In connec-tion with the contract with the U. S. Government which called for my attendance at the New York Port of Embarkation on occasion to discuss matters with the contracting officer whose office was located there, and matters in the New York Shipping Association, whose offices are there, and in matters concerning union relationships in New Jersey are handled through the New York Shipping Association in New York."

10. In connection with its business expenses including entertainment, Mr. Maher stated that some of the money was spent in New York. Also, Mr. Maher stated that the New Jersey corporation pays for Mr. Maher's membership in a club in New York.

From this and other facts, we must determine whether the New Jersey corporation is doing business in New York and whether the New Jersey corporation was properly served?

In the International Shoe case, International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316 et seq., 66 S.Ct. 154, 158, 90 L.Ed. 95, Mr. Chief Justice Stone, delivering the opinion of the court, included the following statements:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * * Since the corporate personality is a fiction, although

a fiction intended to be acted upon as though it were a fact, Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140, it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra, 45 F.2d 141.

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given.

" * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due pro-

cess clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

In order to find corporate "presence" in New York, solicitation of business and something more must be shown. Systematic solicitation is found, and without attempting to set out just what that "something more" is in the instant case, this court refers generally to the ten items listed previously. Accordingly, it is the opinion of this court that the New Jersey corporation was "present" in New York and amenable to process at the time it was served.

While observing the legal fiction of separate corporate entities, it would not do to lose sight of the fact that the two corporations are owned and controlled by the same person, that he is president of both, and that they are therefore possessed of a definitely similar interest. Piercing the veil of the corporate entities, Mr. Maher's identity of interests is apparent.

Mr. Maher stated that the New York corporation was created and paid $500 with a view to solicitation of business and sub-contracting of New Jersey work. As such, and in view of the identity of ownership and control, it is not too much to state that the New York corporation

could be considered the agent of the New Jersey corporation.

By Mr. Maher's own statements, it is extremely difficult to ascertain whether he is in New York as president of the New Jersey or of the New York corporation. In view of the entire state of facts, however, it must be held that it makes little difference in which capacity he was in New York when he was served.

It is the opinion of this court that the service was valid, and that the third party defendant must file its answer. Motion denied.

Settle order.