128 So.2d 594 (1961)
Benjamin ZIRIN, trading and doing business as Zirin Enterprises, Petitioner,
v.
CHARLES PFIZER & CO., Inc., Respondent.
No. 30821.
Supreme Court of Florida.
March 29, 1961.
Rehearing Denied April 26, 1961.
*595 Marchant & Perkins, Miami, for petitioner.
Theobald H. Englehardt and Cheren & Golden, Miami, for respondent.
DREW, Justice.
In addition to alleging a conflict of the decision below with previous decisions of this Court, the petition for certiorari here is accompanied by a certificate of the District Court of Appeal, Third District, under Article V, Section 4(2),[1] Florida Constitution, F.S.A., that such decision is one which passes upon a question of great public interest.[2]
The respondent asserts that our jurisdiction to review this case is a limited one and not so extensive as that possessed by us in cases of direct appeals and interlocutory reviews by certiorari where this Court has "such jurisdiction as may be necessary to complete determination of the cause on review."[3] In this regard, respondent urges that we have the duty of determining what is a proper question within the scope of our power of review; moreover, respondent contends that our jurisdiction is limited to a decision on the question certified.
The first part of these contentions was finally decided by us in the case of Susco Car Rental System of Florida v. Leonard, Fla. 1959, 112 So.2d 832, 834, 835, wherein the Court held, inter alia:
"The preliminary contention by respondents in this Court is that the question decided was not one of `great public interest' in the constitutional sense; that the court erred in so certifying; and that consequently this Court is without jurisdiction in the premises
"Whatever merit this argument might have had before the District Court in opposition to issuance of the certificate, the language of Article V *596 does not, on its face, leave the point open to contest in this forum. Our jurisdiction in this class of cases is that we `may review by certiorari any decision of a district court of appeal * * that passes upon a question certified by the district court of appeal to be of great public interest.' (Emphasis supplied.) Certification is plainly a condition precedent to any review here upon this ground. A negative decision by the district court in the exercise of its discretion in a given case would certainly present no basis for review under the quoted language. Similarly, where a decision involves a question which has, incontrovertibly, been `certified by the district court of appeal to be of great public interest,' then the specified condition has been fully met. No review or redetermination of the point is necessary or even proper unless by some stretch of reasoning the exercise of the power of certification could be found reviewable under related clauses defining other areas of appellate jurisdiction of this Court." (Emphasis theirs.)
The second contention that we are limited in our review to the "question" is seen to be without merit by a simple analysis of the constitutional provision itself. In each of the three instances mentioned where we may exercise our judgment to review by certiorari the subject of the sentence is "any decision of a district court * * *." A decision encompasses the opinion and judgment[4] and is generally regarded as determinative of the case, not merely a part of it. It is not the question of great public interest in a decision that we are concerned with but the decision that passes upon such a question.[5] Needless steps in litigation should be avoided wherever possible and courts should always bear in mind the almost universal command of constitutions that justice should be administered without "sale, denial or delay." Piecemeal determination of a cause by our appellate court should be avoided and when a case is properly lodged here there is no reason why it should not then be terminated here. In the Lissenden[6] case we said, with respect to appeals and in discussing an analogous matter "[m]oreover, the efficient and speedy administration of justice is * * * promoted" by doing so.
An examination of the cases that have been before us under this provision of the Constitution cited in footnote 5 reveals that there is no pattern as to the type of decisions which have been certified by the district courts of appeal as deciding questions of great public interest. Such inconsistency is to be anticipated and is not, as we indicated in the Susco case, supra, a "point open to contest in this forum."
However, our constitutional prerogative exists in the permissive word "may" in that part of Article V reading, "may review by certiorari any question of a district court of appeal * * * that passes upon a question certified by the district court of appeal to be of great public interest." The mandate is clearly jurisdictional in nature and is satisfied, we have said, upon the certification of the district court to this Court. Jurisdiction being vested in us does not mean that we are required to decide the case and this is obvious from the very language of the sentence itself.
In conflict cases our jurisdiction attaches when we determine that there is a conflict. *597 In the event such a determination is reached, then by virtue of the very language of the article itself, as well as the spirit and purpose of the law, we should resolve such conflict so that the laws of this State shall be of uniform operation throughout.[7] Under the provision providing for review of a decision which affects a class of constitutional or state officers, jurisdiction of the cause attaches when it is determined by us that such decision does in fact affect a class of constitutional or state officers. By virtue of the very nature of the discretionary writ of certiorari itself and the express inclusion in the Constitution of the word "may" in dealing with our power to issue these particular writs, we are not required to decide every case that comes here. Whether this Court will in any given case render a decision under these three provisions of the Constitution is a matter solely for this Court in the exercise of its sound judicial discretion to determine. For the purpose of emphasis we repeat that the proposition of whether a decision of a district court decides a question of great public importance is one solely for the district court to determine only insofar as vesting complete jurisdiction in this Court to entertain the cause is concerned. After jurisdiction attaches, the Constitution then brings into play the power of this Court to exercise its discretion and then to determine whether in that case an opinion is justified or required. For instance, to cite just one example, a decision may be certified to this Court that does decide a question of great public importance but, on examination by this Court, we may conclude that the question answered was not essential to a determination of the case and is of such nature that no useful purpose would be served by rendering a decision.[8]
A discussion of the constitutional provisions of other states sheds little light upon this direct question. Our research reveals no provision in any other constitution like ours. We find the answer in the plain and unequivocal language of our own Constitution and the overall plan embraced within Article V for appellate review of cases decided by trial courts of this State.
We now turn to the merits on this question on review. Section 47.171, Florida Statutes 1959, F.S.A., was originally enacted in 1957 as Chapter 57-97, General Laws of Florida. It is interesting to note that Section 1 of the original bill repealed Section 47.17, Florida Statutes 1955, F.S.A., which related to an alternative method of service of process on private corporations. In 1959, Section 47.17 was re-enacted by Chapter 59-46, General Laws of Florida. It now appears in the 1959 Florida Statutes as Section 47.17. Insofar as service of process in the instant case is concerned, it should be noted that such took place during the month of August 1959 or sometime prior to the effective date of present Section 47.17. And so it is that at the time of the service of process in this case the plaintiff in the court below was relying entirely upon the provisions of said Section 47.171.
The respondent here takes the position, among others, that the judgment of the trial court and hence the decision of the district court is correct because said Section 47.171 is restricted in its application to Florida corporations or foreign corporations duly qualified to do business in Florida and that, inasmuch as the corporation involved in these proceedings falls within neither classification but is a foreign corporation not qualified to do business in Florida, the statute is inapplicable to it. We must reject this contention because of our conclusion that the references to Sections *598 47.34, 47.35 and 47.36, Florida Statutes 1959, F.S.A. (the sections relating to Florida corporations and foreign corporations qualified to do business) do not limit its application to such corporations but such section numbers are inserted solely for the purpose of identifying that portion of such statutes which relates to the designation of agents for the service of process. In other words said Section 47.171 provides that any corporation which fails to designate an agent for the service of process may be brought before the courts of this State in a proper case by serving process  so far as foreign corporations are concerned  upon any agent of such corporation transacting business for it in Florida. Mason v. Mason Products Co., Fla. 1953, 67 So.2d 762, 763 was concerned with Section 47.17. In that case we held that the individual upon whom service was made was not the business agent within the contemplation of Section 47.17, Florida Statutes 1951, F.S.A., and that the activities of such person so served was not such as would constitute doing business in this State.[9] And we said "[e]ach case of this kind must rest on its own bottom for the simple reason that whether service is valid depends on what the facts are. There is no way to lay down a general principle applicable to all cases." Among other cases cited in support of the above quoted statement was International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057. This case was among the first to recognize the inapplicability of the old cases relating to service of process upon foreign corporations and applied a rule of law more consistent with the times.[10] At the risk of unduly extending this opinion, we think it may be helpful to quote some pertinent language from that opinion:
"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, 572. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
* * * * * *
"* * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. * * *
"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. * * *"
The proper evaluation of the excerpts of the decision above quoted requires that we bear in mind that this language was directed to the situation shown by the facts in that case. The obligation sued upon and around which the litigation revolved *599 there was one which arose out of the activities of the corporation which brought it within the jurisdiction of the courts. In commenting upon this that Court observed:
"* * * It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure." (Emphasis supplied.)
While it is quite apparent that the purpose of Section 47.171 aforesaid was to liberalize the scope of the operation of said Section 47.17 and provide for the service of process upon any agent of a foreign corporation doing business for it in this State; and while we conclude, as did the dissenting judge below, that the activities of this corporation revealed by this record are sufficient to constitute doing business within this State within the meaning of the statutes and the decisions of this and other courts construing similar statutes involving similar situations, the statute was intended to apply only to obligations or causes of action which arose out of the activities of the corporation in the State. As thus interpreted the statute is not open to the objection that it fails to satisfy the demands of due process. In the International Shoe case, supra, in discussing the question of presence in the state of a foreign corporation, the Court said:
"* * * the terms `present' or `presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, Circuit Judge, in Hutchinson v. Chase & Gilbert (CCA2d) 45 F.2d 139, 141. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An `estimate of the inconveniences' which would result to the corporation from a trial away from its `home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra * * *."
In these days of jet airplanes and modern communications, it cannot be logically argued that the trial of such a cause away from home or principal place of business of the corporation imposes any undue hardship upon it. The courts of this State are always open to the use of such corporations to enforce obligations owed it by Florida citizens. There is no reason why, under the circumstances and subject to the limitations mentioned, the courts of this State should not be available to its own citizens to enforce the obligations of the foreign corporation.[11]
If the record in the instant case established that the cause of action being sued upon was one which arose out of the *600 activities of the defendant corporation in this State, we would approve and adopt as our views the dissenting opinion by Mr. Judge Carroll in the District Court. We do not find in the record proper or in any references in the briefs anything upon which we could determine the basis of the litigation. The complaint is in three paragraphs, one for $50,000, money payable by the defendant to the plaintiff for work and labor done and services rendered and materials furnished. Another is for money found to be due on accounts stated and the other for interest. The account stated which is attached to the complaint is "for services rendered $50,000." It is, therefore, impossible to tell from the record in this case whether this cause of action was one which under the rules announced could afford the basis for valid service of process against this foreign corporation. This being a pivotal and basic point in determining the jurisdiction of the court to proceed, we think the burden should be upon him who invokes the jurisdiction of a court in this State in a suit of this nature to make it appear that the cause of action upon which he sues is one which arose out of the activities of the foreign corporation within this State. Moreover, a failure to do so will render any service upon an agent of that corporation doing business within this State invalid and ineffectual. This essential fact not being established requires us to affirm the action of the district court and of the trial court even though the reasons assigned by both for doing so are in our judgment erroneous.[12]
Affirmed.
HOBSON, ROBERTS, THORNAL and O'CONNELL, JJ., concur.
THOMAS, C.J., agrees to the conclusion.
TERRELL, J., dissents.
NOTES
[1] "The supreme court may review by certiorari any decision of a district court of appeal * * * that passes upon a question certified by the district court of appeal to be of great public interest * * *."
[2] The pertinent portion of the certificate reads as follows:

"To the Honorable, The Supreme Court of Florida:
"We hereby certify to the Supreme Court of Florida, under and as provided for in Article V, Section 4(b) [sic] of the Constitution of Florida, as a means of bringing this cause within the jurisdiction of the Supreme Court in event certiorari is applied for, that the decision of this court in this case `passes upon a question * * * of great public interest,' because the decision involves a point of law of interest to citizens of the State of Florida dealing with foreign corporations within this state."
[3] Article V, Section 4(2), Florida Constitution.
[4] Seaboard Air Line Railroad Company v. Branham, Fla. 1958, 104 So.2d 356, 358.
[5] For other cases where this question has been discussed and which have been certified to us under this provision see Carraway v. Revell, Fla. 1959, 116 So.2d 16, Miami Beach First National Bank v. Edgerly, Fla. 1960, 121 So.2d 417, In re Estate of Wartman, Fla. 1960, 121 So.2d 660, and Sturgis v. Canal Insurance Co. of Greenville, S.C., Fla. 1960, 122 So.2d 313.
[6] P.C. Lissenden Co., Inc. v. Board of County Commissioners of Palm Beach County, Fla. 1959, 116 So.2d 632, 636.
[7] Ansin v. Thurston, Fla. 1958, 101 So.2d 808; South Florida Hospital Corp. v. McCrea, Fla. 1960, 118 So.2d 25; Sunad, Inc. v. City of Sarasota, Fla. 1960, 122 So.2d 611.
[8] Appeals, which are matters of right, should not be confused with discretionary certiorari, with respect to this statement. See P.C. Lissenden Co., Inc. v. Board of County Commissioners of Palm Beach County, footnote 6, supra.
[9] XII U.Miami L.Q. 383, 385 (1958).
[10] X U.Fla.L.Rev. 345, 348 (1957); VIII U.Miami L.Q. 628 (1954).
[11] Statutes similar to Florida Statute 47.29 (1959) F.S.A., which authorizes service upon and in personam judgments against nonresident motor vehicle owners operating or causing to be operated motor vehicles on the public highways of this State by service on the Secretary of State have been universally upheld by the courts of this country. The rationale of the decisions of this and other appellate courts upholding statutes of this kind are clearly applicable to the conclusion we reach in this case. Cf. State ex rel. Cochran v. Lewis, 1935, 118 Fla. 536, 159 So. 792, 99 A.L.R. 123; Cherry v. Heffernan, 1938, 132 Fla. 386, 182 So. 427. See Annotations 35 A.L.R. 951 (1925), 57 A.L.R. 1239 (1928), 99 A.L.R. 130 (1935) for review of decisions of other states.
[12] 2 Fla.Jur. Appeals § 297 (1955), Cottages, Miami Beach, Inc. v. Wegman, Fla. 1951, 57 So.2d 439; In re Freeman's Petition, Fla. 1955, 84 So.2d 544; Jaffe v. Endure-A-Life Time Awning Sales, Inc., Fla. 1957, 98 So.2d 77.